**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**The PEORIA CHAPTER OF the PAINT-ING & DECORATING CONTRAC-TORS OF AMERICA AND ITS INDI-VIDUAL MEMBERS, Respondent.**

No. 73-1772.

United States Court of Appeals, Seventh Circuit.

Argued April 19, 1974.

Decided July 12, 1974.

Elliott Moore, Deputy Associate Gen. Counsel, John Elligers, Atty., National Labor Relations Board, Washington, D. C., for petitioner.

McNeill Stokes, Atlanta, Ga., for respondent.

Before SWYGERT, Chief Judge, CASTLE, Senior Circuit Judge, and SPRECHER, Circuit Judge.

CASTLE, Senior Circuit Judge.

The sole question presented in this application for enforcement of an order of the National Labor Relations Board is whether § 8(d)(4) of the National Labor Relations Act prohibits an employer from locking out employees more than sixty days subsequent to receiving the union's notice of intention to terminate the existing contract, as required by § 8(d)(1), but less than thirty days after the union untimely notifies federal and state mediation services under § 8(d)(3). We deny the petition for enforcement.

On February 14, 1972, Local 157 of the International Brotherhood of Painters and Allied Trades ("the Union") sent written notice to the Peoria Chapter of the Painting and Decorating Contractors of America ("the Association"), the collective bargaining representative for twenty-six member employers, that it was prepared to renegotiate the existing contract, which was due to expire on April 30, 1972. Formal negotiations between the parties commenced on March 23, 1972. At the second bargaining session on April 10, the Union advised the Association that it had contacted federal and state mediation services and that subsequent sessions would occur before a federal mediator. The federal and state mediation agencies received the Union's request for services in the mail on April 11, 1972. A

federal mediator attended the next negotiating session, held on April 18, as well as subsequent sessions; however, no accord was reached. The Association notified the Union by telegram dated May 1, 1972 that because of the unresolved status of the contract its members' employees would be immediately laid off until further notice. All members of the Association participated in the lockout, which extended through May 9, 1972.

The Administrative Law Judge, in an order adopted by the National Labor Relations Board, found that the Association's lockout constituted a refusal to bargain within the meaning of §§ 8(a)(5) and (1) of the Act. The Judge determined that the lockout was unlawful because it occurred less than thirty days subsequent to the date on which notice was received by federal and state mediators and that the Union's untimely notice to the mediators did not excuse the Association from observing the thirty-day moratorium on lockouts.

Section 8(d) of the Act, which encompasses the "cooling-off" provisions added by 61 Stat. 142 (1947), 29 U.S.C. § 158(d), provides in pertinent part:

> For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession: *Provided*, That where there is in effect a collective-bargaining contract covering employees in an industry affecting commerce, the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify

such contract, unless the party desiring such termination or modification—

(1) serves a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification;

(2) offers to meet and confer with the other party for the purpose of negotiating a new contract or a contract containing the proposed modifications;

(3) notifies the Federal Mediation and Conciliation Service within thirty days after such notice of the existence of a dispute, and simultaneously therewith notifies any State or Territorial agency established to mediate and conciliate disputes within the State or Territory where the dispute occurred, provided no agreement has been reached by that time; and

(4) continues in full force and effect, without resorting to strike or lock-out, all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later

The National Labor Relations Board concedes that under § 8(d), the Union, as the party initially desiring to modify the contract, was obligated to notify federal and state mediation services within thirty days after notifying the Association of its intention to seek modification of the existing contract. However, citing Local Union 219, Retail Clerks International Association, AFL–CIO v. NLRB, 105 U.S.App.D.C. 232, 265 F.2d 814 (1959) for the proposition that § 8(d)(3) and (4) require a thirty-day period between untimely notification or mediation services and a strike or lock-out by the party required to give notice, the Board contends that the party not obligated to give notice under § 8(d)(3) must also observe a thirty-day moratorium following the initiating party's untimely notification of mediation agencies before calling a strike or lockout, even if the total elapsed time following receipt of notification of the initiating party's intent to modify or terminate the contract exceeds sixty days. In deciding this case, we must therefore determine, firstly, whether obligations expressly imposed on the initiating party by § 8(d)(4) are implicitly applicable to the noninitiating party. Secondly, if we find that the requirements of § 8(d)(4) are applicable to the noninitating party, we must then decide whether that section requires a party to bargain collectively for thirty days following untimely notice to mediators, even when the sixty-day "cooling-off" period embodied in § 8(d)(1) has expired.

By its terms § 8(d) requires both parties to observe "the mutual obligation to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment." Under this general duty to bargain collectively, the statute imposes additional responsibilities in § 8(d)(1)–(4) on "the party desiring such termination or modification" of the existing contract. Two of these provisions, § 8(d)(1) and (3), relate to the serving of notice to the other party to the collective bargaining agreement and to the mediators, respectively. These provisions have always been interpreted as applicable only to the party initiating the dispute. In United Furniture Workers of America, AFL–CIO v. NLRB, 118 U.S.App.D.C. 350, 336 F.2d 738 (1964), the court held that § 8(d) placed the burden for giving the required notices under § 8(d)(3) as well as under § 8(d)(1), "upon the party to the contract who raises the possibility of industrial conflict by moving to open up the existing contractual agreements." *Id.* at 741. *See also*, Carpenters District Council and Vicinity v. Rocky Mountain Prestress, Inc., 172 NLRB No. 87

(1968). Obviously, only the party initiating the dispute would be in a position to notify the other party. And, in *United Furniture Workers,* the court eloquently stated that "the peril that the public interest in the emollient intervention of the mediation services will fall between the two stools of contending parties wholly intent upon the uncertain . . . fortunes of their negotiating positions . . . [was] avoided by assigning a fixed and definite responsibility for notifying the public agencies. Congress has made that assignment and, not surprisingly, it is to the party who starts the process." *Id.* at 741. As Congress intended that the phrase "party desiring such termination or modification" refer to the initating party with reference to clauses (1) and (3), surely Congress intended for that phrase to bear the same meaning in the context of clauses (2) and (4), which require such party to offer to meet and confer with the other party and to continue the terms of the existing contract without resort to strike or lockout for a period of sixty days after notice is given. That clauses (2) and (4) are applicable only to the initiating party is established by the phrase in clause (4) "for a period of 60 days after such notice is *given*" (emphasis added). As explained previously, only the party who initiated the dispute could possibly be able to provide such notice to the other party. The Administrative Law Judge concluded as a matter of law that the Association violated § 8(d)(4). Since the command of § 8(d)(4) was directed only to the initiat-

ing party and since the Union, not the Association, initiated this dispute, the Association cannot be held liable for violating § 8(d)(4), on which the findings of unfair labor practices violative of § 8(a)(5) and (1) were predicated.[1]

Nor do we believe that the Association could have been held liable for violating its § 8(d) duty to bargain collectively by calling a lockout more than sixty days after the Union notified the Association of its intention to renegotiate the agreement but less than thirty days after the Union untimely notified mediation agencies. The Association had a duty to observe the terms of the existing bargaining agreement and to negotiate in good faith while the Union performed its obligation under § 8(d)(4) of complying with present contractual provisions without resorting to a strike "for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later." Applying the plain language of the statute, it is clear to us that the Union fulfilled its § 8(d)(4) obligations to observe the terms of the existing contract and to refrain from striking on April 30, 1972, the date on which the contract expired (and seventy-six days after the Union gave notice to the Association); thereafter, the Association was not precluded from calling a lockout.[2] This conclusion is supported by both a textual analysis of the statute and legislative history. The section is clearly phrased in terms of a unitary sixty-day waiting period keyed to the

---

1. We recognize that the Board has adopted a contrary position in Carpenters District Council and Vicinity v. Rocky Mountain Prestress, Inc., 172 NLRB No. 87 (1968), though without explanation or citation to any authority. The Board might have been simply using a shorthand expression to describe the indirect operation of § 8(d)(4) on noninitiating parties through § 8(d). As discussed above, we interpret § 8(d) as requiring the noninitiating party to bargain collectively until the initiating party has satisfied its obligations under § 8(d)(4).

2. We recognize, of course, that other aspects of § 8(d) and especially § 8(d)(4) are "susceptible of various interpretations" and "subject to ambiguity." NLRB v. Lion Oil Co., 352 U.S. 282, 288, 77 S.Ct. 330, 1 L. Ed.2d 331 (1957); Mastro Plastics Corp. v. NLRB, 350 U.S. 270, 76 S.Ct. 349, 100 L.Ed. 309 (1956); Final Report of the Joint Committee on Labor-Management Relations, S. Rep.No. 986, Pt. 3, 80th Cong., 2nd Sess. 62–63. We are satisfied, however, that none of the ambiguities mentioned in the above citations are relevant to the issue presented in this case nor bar our reliance on the plain words of this aspect of the statute.

notice provision of § 8(d)(1) or the expiration date of the contract, whichever occurs later. The intent of § 8(d)(4) is obviously to extend the term of the contract, reflecting a legislative conclusion that the maintenance of normalcy in industrial operations is conducive to the rapid settlement of disputes. There is no provision in § 8(d)(4) for a bifurcated waiting period of thirty days following each of the two statutory notices when the notice to the mediators is untimely given. That result, which is advocated by the Board, is in fact antithetical to the statutory scheme and would upset the delicate timing mechanism embodied in the Act. Section 8(d) provides for the introduction of mediators into the dispute at the optimum time for settlement: after the parties themselves have had an opportunity to make an initial attempt at settlement, while both contractual working conditions and negotiations continue without interruption, and while the parties are influenced by the increasing possibility of a strike or lockout. If the waiting period were to be construed as two thirty-day segments, the probability of successful mediation occurring after untimely mediation notice is given following a possible lapse in negotiations at the completion of a thirty-day period after notice was given to the other party is less apparent.

Moreover, the interpretation for which the Board contends, would vitiate the right of employers recognized in American Shipbuilding Co. v. NLRB, 380 U.S. 300, 85 S.Ct. 955, 13 L.Ed.2d 855 (1965), to lawfully temporarily lock out employees during a labor dispute in order to bring economic pressure in support of their bargaining positions. If we adopted the Board's approach, a noninitiating party who bargained in good faith during the sixty-day "cooling-off" period and then concluded that lawful coercion in the form of a lockout was necessary to facilitate a settlement restoring industrial harmony would be at the mercy of the party who initiated the negotiations for a new contract. That party, by unlawfully prolonging its § 8(d)(3) obligation to notify state and federal mediation services and then subsequently notifying the mediators at a propitious moment when the employer has called for a lockout, can skillfully manage to inflict liability for employee back-pay awards on the employer. (The converse is, of course, equally true: by withholding notification of mediators, an initiating employer could notify the mediation service when the union was on the verge of the strike at which point the union might incur the loss of its membership by lawful discharge.) Alternatively, the initiating party could keep its threat of untimely notification of mediators in reserve to neutralize any pressure through strike or lockout which the other party might muster after sixty days to resolve the dispute quickly (though that party would be obligated to notify the mediators at some point to avoid liability. United Furniture Workers of America v. NLRB, *supra*.)

■  Furthermore, there is nothing in the legislative history of the Act which suggests either that the extent of the "cooling-off" period is variable, depending on when the initiating party chooses to notify the mediators, or that the mediation provision is operative independently of the entire § 8(d) scheme. On the contrary, the legislative history suggests that notice to the mediation services within thirty days after notice is given to the other party implies the corresponding obligation by the noninitiating party to bargain in good faith during the remaining portion of the sixty-day period. Thus, once the noninitiating party has observed its duty to bargain collectively during the sixty-day period subsequent to receiving notice, it has fulfilled its duty under § 8(d), whether or not the initiating party has met its obligation under § 8(d)(3) to notify state and federal mediators.[3]

3.  *See generally*, S.Rep.No.105, 80th Cong., 1st Sess. (1947); H.R.Rep.No.510, 80th Cong., 1st Sess. (1947); H.R.Rep.No.245, 80th Cong., 1st Sess. (1947); Legislative History of the Labor Management Relations Act (1947).

In so holding, we reject any implication in Local Union 219, Retail Clerks International Association, AFL–CIO v. NLRB, *supra,* extending the noninitiating party's duty to bargain collectively beyond the sixty-day "cooling-off" period commencing with notice to the noninitiating party. In *Retail Clerks,* the court held that the initiating party, the union, had violated § 8(d)(4) by calling a strike 10 days subsequent to the giving of untimely notice to federal and state mediators, although the strike occurred after the sixty-day waiting period had passed. The court obviously sought to mitigate "the harsh result" of International Union of Operating Engineers, Local No. 181 v. Dahlem Construction Co., 193 F. 2d 470 (6th Cir. 1951), where the court held that the failure to give timely notice to mediators under § 8(d)(3) forever tainted under § 8(d)(4) a subsequent strike, by stating that an initiating union could lawfully call a strike thirty days after giving untimely notice because the scheme of the Act only envisioned a thirty-day waiting period after the giving of timely notice. It is unnecessary for us to pass judgment on the question raised in *Retail Clerks* at this time. We note only that in reaching its result on a somewhat equitable basis, the court noted, significantly, that "even though the waiting period is now beyond a literal 60-day period, this added period hardly seems to violate Sections 7 and 13 [relating to the right to strike], for it is only brought about by the union's failure to give the notice prescribed by Section 8(d)(3) . . . and not because of a harsh interpretation of the Act." *Id.* 265 F.2d at 819. Precisely the opposite would occur here if the Board's position were adopted. The Association, the noninitiating party, would be penalized through the burden of observing an additional thirty-day waiting requirement because the Union, the initiating party, violated its duty to give the notice to mediators prescribed by § 8(d)(3). The adoption of the Board's position would indeed necessitate a "harsh interpretation of the Act."

The petition of the National Labor Relations Board is denied.

Denied.