**HOOKER CHEMICALS & PLASTICS CORPORATION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 76–1597.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 8, 1977.

Decided March 30, 1978.

---

Samuel R. Born, II, Indianapolis, Ind., for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, John G. Elligers, Alieen Armstrong, Attys., N.L.R.B., Washington, D. C., for respondent.

Before FAIRCHILD, Chief Judge, and SWYGERT and PELL, Circuit Judges.

PELL, Circuit Judge.

This is a petition for review and cross-application for enforcement of an order of the National Labor Relations Board (Board). The issue is whether the petitioner, Hooker Chemicals & Plastics Corporation (employer), violated the National Labor Relations Act (Act) when it locked out its employees at the termination of the applicable collective bargaining contract, more than 60 days after the union notified petitioner that it wanted to re-negotiate the agreement, but less than 30 days after the union untimely notified the federal and state mediation services.

The employer manufactured chemical products at its thirteen plants in the United States. The International Chemical Workers Union (union) represented the employees at three plants: the Jeffersonville, Indiana, plant (the facility involved in this case), the Montague, Michigan, plant, and the Tacoma, Washington, plant. The union had negotiated successive collective bargaining contracts with the employer for several years. The agreement relevant to this case was effective from April 29, 1974, to April 15, 1975.[1]

On January 27, 1975, the union notified the employer pursuant to Section 8(d)(1) of the Act,[2] that it wished to negotiate a new

1. The agreements at the Montague and Tacoma plants expired, respectively, on May 9, 1975, and May 29, 1975.

2. Section 8(d) of the Act provides in pertinent part:

    (d) For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a

written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession: *Provided,* That where there is in effect a collective-bargaining contract covering employees in an industry affecting commerce, the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification—

    (1) serves a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the

agreement at the Jeffersonville plant. The employer agreed to negotiate, and bargained with the union during eight sessions between February 11 and April 14. On April 15, 1975, the union informed the employer that the employees had rejected the employer's April 14 offer, but that all the employees were prepared to continue working at their jobs. At 12:01 p. m. on April 15, the employer, in reliance on the authority of *N.L.R.B. v. Peoria Chapter of Painting and Decorating Contractors,* 500 F.2d 54 (7th Cir. 1974), and after the agreement expired by its own terms, locked out its employees.[3] The lockout continued until June 9, 1975, at which time the parties agreed to a new two-year contract.

The Board concluded that the employer, by locking out its employees less than 30 days after the union untimely notified the mediation services, violated its duty to bargain collectively as defined in Section 8(d), and thereby violated Sections 8(a)(1)[4] and (5)[5] of the Act. The Board refused to follow our decision in *Peoria Contractors, supra,* which reached the opposite result on exactly the same issue.

The issue in *Peoria Contractors,* as here, is the proper construction of Section 8(d) which defines the duty to bargain collectively. This section provides that if a collective bargaining agreement is in effect, a party who wishes to modify or terminate the agreement, the initiating party, must notify the other party 60 days prior to contract termination [8(d)(1)] and must notify the mediation services 30 days after this 60-day notice [8(d)(3)]. Also, the initiating party must refrain from strike or lockout for 60 days after the 60-day notice [8(d)(4)]. In the instant case the initiating party,[6] the union, gave the employer timely 60-day notice under 8(d)(1), but failed to notify the mediation services within 30 days after the 8(d)(1) notice as required by 8(d)(3). In fact, the union did not notify the mediation services until April 9, 1975, six days before the contract expired.

The Board's position was that the employer violated 8(d)(4) by locking out its employees before the mediation services had 30 days to intervene, even though the burden to notify the mediation services was

---

expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification;

(2) offers to meet and confer with the other party for the purpose of negotiating a new contract or a contract containing the proposed modifications;

(3) notifies the Federal Mediation and Conciliation Service within thirty days after such notice of the existence of a dispute, and simultaneously therewith notifies any State or Territorial agency established to mediate and conciliate disputes within the State or Territory where the dispute occurred, provided no agreement has been reached by that time; and

(4) continues in full force and effect, without resorting to strike or lock-out, all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later.

29 U.S.C. § 158(d).

3. After the employer proposed its "final offer" at the April 14 session, the union informed the employer that it could not lock out any employees after the contract expired on April 15 because the union had failed to notify the mediation services until April 9, an untimely notice under § 8(d)(3). The employer alleged that the

union purposefully delayed notifying the mediation services to preclude the employer from locking out until the expiration of contracts at the other two plants. By coordinating contract expiration dates at the three plants, the union could increase its bargaining strength in that it could strike the three plants simultaneously.

4. Section 8(a)(1) provides:

It shall be an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title.

29 U.S.C. § 158(a)(1).

5. Section 8(a)(5) provides:

It shall be an unfair labor practice for an employer to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

29 U.S.C. § 158(a)(5).

6. The initiating party could be either the union or the employer. In the instant case it was the union, so we will use "initiating party" and "union" interchangeably throughout this opinion. It follows, of course, that what we say about the union is equally applicable to an employer when it is an initiating party.

clearly on the union. We refuse to enforce this construction of 8(d) because it requires contorting the statute's plain language without any clear indication of legislative intent suggesting such a perversion. We are of the opinion that the employer fulfilled its statutory duties under 8(d) by bargaining in good faith until · the contract expired.

The Board argues, however, that the legislative history of 8(d) suggests that Congress intended to give the mediation services 30 days to attempt a peaceful settlement before permitting either party to invoke the economic weapons of strikes or lockouts. In support of this argument, the Board quotes Senator Taft's explanation of 8(d):

We have provided in the revision of the collective bargaining procedures, in connection with the mediation process, that before the end of any contract . . . either party who wishes to open the contract may give 60 days notice in order to afford time for free collective bargaining, ·and then for the intervention of the Mediation Service.

93 Cong.Rec. 3955 (1947), *reprinted in* 2 Legislative History of the Labor Management Relations Act, 1947, 1015 (1948). This statement by Senator Taft does not, in our opinion, clearly indicate that Congress intended to guarantee, in all cases, a 30-day period for bargaining assisted by the mediation services. The statement is equally susceptible to an interpretation that Congress required the 8(d)(1) 60-day notice within which time the mediation services could intervene assuming they were timely notified. We do not intimate that this latter interpretation is the more logical, but do note that it demonstrates the inconclusive nature of Senator Taft's statement. Nothing in the statement suggests that if the initiating party gives late notice to the mediation services, the noninitiating party is precluded from exercising its right to strike or lock out until the mediation services have had 30 days to intervene, even if this exceeds the contract expiration date.

The Board also quotes a report of the Watchdog Committee established by Congress to monitor 8(d) and other amendments to the Act. The quoted portion states as follows:

The act emphasizes an equally important function of mediation and conciliation, which is prevention of disputes that, without such preventive effort, would be apt to arise. Prevention of disputes has continued to be a major program of the new [FMCS]. The Service has been greatly assisted in this program by the fact that under Section 8(d)(3), a party desirous of modifying or terminating its contract *must notify the Service 30 days before resorting to a strike or lockout.* . . . In the days before the 30-day notice was required, strikes frequently occurred before the . . . Service *had any knowledge that there was a dispute.* Mr. Chaing [then Director of the FMCS] believes that in many instances the early intervention of conciliators has prevented a strike. [Emphasis added]

Joint Comm. on Labor-Management Relations, Final Report, S.Rep. No. 986, Pt. 3, 80th Cong., 2d Sess. 15 (1948). This report is even less persuasive support for the Board's position than Senator Taft's statement. The only clear indication of legislative intent that can be discerned from this report is that the burden of notifying the mediation services is on the initiating party, a concept clearly expressed by the language of the statute. Placing the burden to notify on one party will, as the report suggests, assist the mediation service. This is logical because it eliminates the possibility that neither party would notify the mediation services as a result of confusion as to which party had the burden. Nothing in this report suggests that Congress intended to deprive the noninitiating party of its right to use economic weapons merely because the initiating party defaulted in its duty to notify the mediation services in a timely fashion.

The Board sought additional support for its legislative intent argument from a District of Columbia Circuit opinion which stated that "the whole thrust of the section

[8(d)(3)] is to give the Service [FMCS] sufficient time to intervene in an effective manner . . . ." *Local 219, Retail Clerks International Association v. N.L.R.B.,* 105 U.S.App.D.C. 232, 236, 265 F.2d 814, 818 (1959). Although the legislative history of 8(d)(3), in our opinion, lacks the clarity necessary to resolve the issue in the present case, we are willing to accept, *arguendo,* the construction of the District of Columbia Circuit. Even if the whole thrust of 8(d)(3) is to give the mediation services sufficient time to intervene in an effective manner, our construction of the statute in the context of the present case is not inconsistent with that purpose.

We acknowledge that our construction, which permits an employer to lock out at the expiration of the contract when the union untimely notifies the mediation services, does not *guarantee* the mediation services 30 days in all circumstances, but it does, in most situations, assure proper notification and thus sufficient time to intervene. In most situations, the initiating party will have a strong incentive to give timely notices. Failure to give timely notices deprives it of its economic arsenal. For example, if the union fails to notify the mediation services within the time limits of 8(d)(3), it cannot strike until 30 days after it gives notice. *United Furniture Workers of America v. N.L.R.B.,* 118 U.S.App.D.C. 350, 336 F.2d 738 (1964), *cert. denied,* 379 U.S. 838, 85 S.Ct. 73, 13 L.Ed.2d 44. Thus, at contract expiration, a critical stage, the union's economic power to strike must remain dormant. Furthermore, the union's incentive to notify in a timely fashion is heightened by the knowledge that at this critical stage, the employer may lock out. Ordinar-

ily, the union has no reason to delay notification,[7] and every reason to give timely notice. Such a scheme surely serves the purpose of giving the mediation services sufficient time to intervene in an effective manner. Of course, it does not guarantee in absolute terms a 30-day period for the mediation services, but we do not read anything in the language of the statute or in its legislative history to indicate a rigid, absolute 30-day requirement.

The rigid, absolute 30-day requirement suggested by the Board is, in our opinion, a matter of policy that is not reflected in the statutory language. We, in no way, suggest that a policy of guaranteeing the mediation services 30 days to intervene before permitting strikes or lockouts is unjustifiable. Indeed, such a policy has substantial appeal and may well better serve the public interest in peaceful dispute resolution. We cannot avoid, however, classifying such a policy determination as one for the Congress[8] and not for the Board or the judiciary. Surely, Congress, if is so intended, could have provided an absolute requirement that no strikes or lockouts could occur until the mediation services have had 30 days to intervene. Because Congress did not so legislate, we need not contort the statutory language to best serve one possible construction of the statute's purpose if a more straightforward reading of the statute also serves that purpose, albeit not perfectly.

Under the Board's construction, if the union fails to give timely notice to the mediation services, the employer is placed in the precarious position of either waiting for the union to notify and thereby sacrific-

---

7. The union's incentive to delay notification in the present case apparently was to coordinate bargaining at three of the employer's plants. The attractiveness of even this incentive would pale if the union was certain, as it should have been after *Peoria Contractors,* and as it will be after this case, that the employer could lock out at contract expiration.

8. Although we find it unnecessary to evaluate its significance, we do note that *Peoria Contractors* has been of record for more than three and one-half years and, to our knowledge, Con-

gress has not initiated counter-remedial action as to the result of that case. Such inaction is not always the situation. *See, e. g.,* S. 35, 95th Cong., (as amended by Amdt. No. 1426), a bill entitled "The Civil Rights Improvement Act of 1977" which would, *inter alia,* amend 42 U.S.C. § 1983 to provide that the right to enjoy one's reputation is protected by the due process clause of the Fourteenth Amendment. This proposed legislation is in direct response to the Supreme Court's opinion in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

ing its right to lock out [9] at contract expiration, or notifying the mediation services itself.[10] The Board, in its brief, suggested the latter alternative as the proper method by which the employer should have preserved its right to lock out. We disagree. As we read the statute and its legislative history, we discern a Congressional purpose to increase the likelihood that the mediation services will have sufficient time to intervene. The method Congress chose to serve this purpose was to assign to one party, the initiating party, a fixed and definite responsibility for notifying the mediation services. Under the Board's theory if the initiating party fails to notify, the noninitiating party would have to assume the burden so as to preserve its right to use economic weapons at contract expiration, a result not contemplated by Congress, and a result that would contravene the method Congress chose to serve its purpose.

The Board also argues that our *Peoria Contractors* decision should not be followed because it gives the noninitiating party the tactical advantage of "first strike capability." Specifically, the initiating party that files a late 8(d)(3) notice must refrain from using economic weapons for 30 days after the untimely notice, while the noninitiating party would not be so restrained. This lack of mutuality, however, in our opinion, does not disturb the logic of our *Peoria Contractors* opinion or our reaffirmation of that opinion today. The restraint imposed on the initiating party may be viewed as an incentive to fulfill its statutory duty to give timely notice; the initiating party need only perform its statutory duty to avoid the restraint. Accordingly, we perceive no injustice in permitting the noninitiating party to use economic weapons after contract expiration even though the initiating party

may be restrained from such actions as a result of its own default. Senator Taft, in describing the effect of a union giving late notice under 8(d)(1) employed similar reasoning:

> [i]n that case there is a so-called waiting period during which a strike is illegal, but it is only brought about by the failure of the union itself to give the notice which the bill requires shall be given. So it seems to me to be no real limitation of the rights of labor unions.

93 Cong.Rec. 3955 (1947), *reprinted in* 2 Legislative History of the Labor Management Relations Act, 1947, 1015 (1948).

For these reasons, we grant the petition for review and deny the Board's cross-application for enforcement.

FAIRCHILD, Chief Judge, dissenting.

With all respect, I vote to overrule *Peoria Contractors* and to enforce the Board order in this case.

One of several difficulties with 29 U.S.C. § 158(d) is that the drafter must have assumed that the period of sixty days referred to in paragraph (4) will always include a period of at least thirty days during which the FMCS had notice of the dispute. This assumption will be fulfilled whenever the party initially desiring termination complies with paragraph (3) and notifies FMCS within thirty days after the service of the notice required by paragraph (1).

Because of those assumptions, doubtless, the drafter failed to spell out what should happen if the paragraph (3) notice is delayed. Apparently everyone agrees that as to the party initially desiring termination, delay in serving a paragraph (3) notice tolls the running of the sixty day period in para-

---

9. The employer's right to lock out its employees to bring economic pressure in support of its bargaining position was recognized in *American Shipbuilding Co. v. N.L.R.B.*, 380 U.S. 300, 85 S.Ct. 955, 13 L.Ed.2d 855 (1965).

10. If the employer must assume the burden to notify, this may, in some circumstances, jeopardize bargaining efforts. For example, if when the 8(d)(3) notice is due, bargaining is at a delicate stage, and the union as the initiating

party fails to notify the mediation services, the employer may inquire whether the union has given notice. The union may respond that it is optimistic about the present progress in the bargaining and foresees no need for government intervention. At this point, the employer may be somewhat reluctant to notify the mediation services fearing that he may jeopardize bargaining progress by doing so.

graph (4). That result already introduces an interpretation that the period of sixty days under paragraph (4) must have included a period of at least thirty days during which FMCS had notice of the dispute.

Notice to FMCS and the resulting opportunity for mediation and conciliation may well serve an interest of either or both bargaining parties. If only their interests were served, it would be sensible to permit the noninitiating party to waive the full opportunity for mediation and conciliation in the event of delay by the initiating party. But it seems so clear to me that the thirty day opportunity for mediation and conciliation was intended to serve the national and public interest that paragraph (4) should be interpreted accordingly. Neither party should be permitted to waive it. I see no reason why the party who did not serve the initial sixty day paragraph (1) notice cannot serve the paragraph (3) FMCS notice if that party desires to avoid further tolling of the period of sixty days for the purpose of paragraph (4).