779 F.2d 552
 121 L.R.R.M. (BNA) 2237, 54 USLW 2392,
104 Lab.Cas. P 11,764
 INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND
MOVING PICTURE MACHINE OPERATORS OF UNITED STATES AND
CANADA, Southern Association of IATSE District No. 2 Locals,
AFL-CIO, and its Constituent Local Unions No. 215, 297, 504,
521, 577, 709 and 762, and International Alliance of
Theatrical Stage Employees and Moving Picture Machine
Operators of United States and Canada, Southern Association
of IATSE District No. 2 Locals, AFL-CIO, and its Constituent
Local Union No. 294, Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
and
United Artists Communications, Inc., Intervenor.
 No. 85-7140.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 6, 1985.
Decided Dec. 30, 1985.
 
 Michael B. Roger, Paul Supton, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, Cal., for petitioners.
 John Elligers, Washington, D.C., for respondent.
 
 
 1
 Philip L. Ross, Severson, Werson, Berke, & Melchior, San Francisco, Cal., for intervenor.
 
 
 2
 On Petition for Review of Decision and Order of the National Labor Relations Board.
 
 
 3
 Before HUG and HALL, Circuit Judges, and JAMESON,* District Judge.
 
 JAMESON, Senior District Judge:
 
 4
 The International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of United States and Canada (IATSE), District 2 and its constituent local unions (the Unions) have petitioned this court to review a decision of the National Labor Relations Board construing Title I of the Labor Management Relations Act (LMRA), 29 U.S.C. Secs. 151-187. The Board held that the burden of notifying the mediation services[1] of a dispute under Section 8(d)(3) and (4) of the LMRA, 29 U.S.C. Sec. 158(d)(3) and (4), rested on the party initiating the bargaining process (the Unions),[2] and that the failure to file such notice did not preclude the non-initiating party (United Artists Communications, Inc.) from undertaking otherwise lawful economic action. We affirm the decision of the Board and deny the petition for review.
 
 I. Background
 
 5
 IATSE and its constituent local unions represent United Artists Communications' projectionists in southern California and Phoenix, Arizona. Collective bargaining agreements covering the projectionists expired on January 31, 1982. Despite a long history of successful negotiations, the Unions and United Artists were unable to reach a further collective bargaining agreement, causing the southern California locals on November 1, 1982 and the Phoenix local on March 7, 1983 to file charges against United Artists with the Board. The Unions charged that United Artists committed an unfair labor practice, violating Sec. 8(a)(1) and (5) of the LMRA, by implementing unilateral changes, absent the requisite notice to the mediation services required by section 8(d)(3).
 
 
 6
 The Unions initiated the bargaining process.[3] In compliance with section 8(d)(1) of the LMRA, the southern California locals notified United Artists by letter, dated December 1, 1981, of their desire to negotiate a new collective bargaining agreement; similarly, the Phoenix local notified United Artists by telegram on May 7, 1981. The Unions sought to extend the terms of the collective bargaining agreement then in force for one year. United Artists sought to modify the terms of the agreement to permit more efficient use of new technological advances in projection equipment. Old equipment required the constant attention of the projectionist during the film's showing, while new equipment allows one projectionist to move from theatre to theatre performing maintenance work and setting up films as needed. The new equipment significantly reduces the number of projectionists needed.
 
 
 7
 The Unions and United Artists conducted a series of sixteen negotiating sessions beginning January 21, 1982, and ending in the fall of that year. United Artists presented its final offer to the southern California locals on September 9 and to the Phoenix local on November 8, and unilaterally implemented its offers on October 11 and December 6 respectively. Strikes followed implementation of the changes.
 
 
 8
 During the bargaining process neither the Unions nor United Artists notified the mediation services within thirty days of the sixty day notice of section 8(d)(1) to United Artists, as required by section 8(d)(3) of the LMRA. However, despite the lack of formal notice, the Federal Mediation and Conciliation Service knew of the disputes and participated in the negotiations on November 8, 1982, and January 20, 1983. United Artists eventually provided formal notice to the mediation services on January 23, 1983, after it had already implemented unilateral changes.
 
 
 9
 II. Findings of the Administrative Law Judge and the Board
 
 
 10
 The administrative law judge found that United Artists violated section 8(d)(3) of the LMRA, by implementing its final offer before the mediation services had been notified. The Board reversed, finding that section 8(d)(3) imposed no burden on United Artists to notify the mediation services where the Unions, as initiating parties, had failed to do so, and finding that unilateral change by United Artists as the non-initiating party was consistent with the LMRA since the sixty day period of section 8(d)(1) and (4) had expired. In reversing, the Board abandoned its earlier position that section 8(d)(3) prohibits both parties to a collective bargaining agreement from imposing unilateral changes or using economic weapons, such as strike or lockout, until thirty days after the mediation services have been notified, and adopted the position taken by the Seventh Circuit in denying enforcement in two previous Board decisions. See Hooker Chemicals & Plastics v. NLRB, 224 NLRB 1535 (1976), enf. denied, 573 F.2d 965 (7th Cir.1978); NLRB v. Peoria Chapter of Painting and Decorating Contractors, 204 NLRB 345 (1973), enf. denied, 500 F.2d 54 (7th Cir.1974).
 
 III. Standard of Review
 
 11
 Congress has delegated the often difficult and sensitive task of determining national labor policy to the National Labor Relations Board, subject to limited judicial review. Beth Israel Hospital v. NLRB, 437 U.S. 483, 501, 98 S.Ct. 2463, 2473-74, 57 L.Ed.2d 370 (1978). If the Board's construction of the statute is "reasonably defensible," it should not be rejected merely because the courts might prefer another view of the statute. Ford Motor Co. v. NLRB, 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979); Hospital & Service Employees Union, Local 399 v. NLRB, 743 F.2d 1417, 1425 (9th Cir.1984).
 
 
 12
 Nor is the Board "disqualified from changing its mind; and when it does, the courts still sit in review of the administrative decision and should not approach the statutory construction issue de novo...." NLRB v. Local 103, Iron Workers, 434 U.S. 335, 351, 98 S.Ct. 651, 661, 54 L.Ed.2d 586 (1978). Rather, the task of the reviewing court is to decide whether "the Board has reached a fair and reasoned balance upon a question within its special competence," and whether in "its newly arrived at construction" the Board "has adequately explicated the basis of its interpretation." NLRB v. Weingarten, Inc., 420 U.S. 251, 267, 95 S.Ct. 959, 968, 43 L.Ed.2d 171 (1975).
 
 
 13
 IV. Is the Board's Interpretation "Reasonably Defensible?"
 
 
 14
 To determine the reasonableness of the Board's interpretation we look to the statute and corresponding legislative history of the LMRA.
 
 A. Statutory Language
 Section 8(d) provides in relevant part:
 
 15
 [W]here there is in effect a collective-bargaining contract covering employees in an industry affecting commerce, the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification--
 
 
 16
 (1) serves a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof....;
 
 
 17
 (2) offers to meet and confer with the other party for the purpose of negotiating a new contract or a contract containing the proposed modifications;
 
 
 18
 (3) notifies the Federal Mediation and Conciliation Service within thirty days after such notice of the existence of a dispute, and simultaneously therewith notifies any State or Territorial agency established to mediate and conciliate disputes within the State or Territory where the dispute occurred, provided no agreement has been reached by that time; and
 
 
 19
 (4) continues in full force and effect, without resorting to strike or lock-out, all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later.
 
 
 20
 (Emphasis added).
 
 
 21
 The statute places the four enumerated duties on the initiating party--"the party desiring such termination or modification." Although somewhat ambiguous because of the prefactory phase that "no party to such contract shall terminate or modify such contract," the statute places no such enumerated duties explicity on the non-initiating party.
 
 
 22
 The Unions, citing the Board's prior decisions in Hooker Chemicals and Peoria Painting, contend that to facilitate recourse to the mediation services, an integral part of the bargaining scheme, the section 8(d)(3) notice must be given to the mediation services prior to unilateral change by either party. The Board, however, overruled these prior decisions, reasoning:
 
 
 23
 [I]t is evident from a fair reading of Section 8(d) that the notice burdens of that provision fall exclusively, in the words of the statute, on "the party desiring such termination or modification." Although the participation of the mediation services is clearly an important and principal policy interest embodied in Section 8(d), we will not interpret the statute in a manner mandating a rigid and absolute 30-day mediation requirement when the initiating party possessing the notice burden has made no effort to satisfy its notice obligations and thereby has foreclosed the non-initiating party's right to resort to economic weapons or, as here, to implement new terms and conditions of employment.
 
 
 24
 In reaching this conclusion, the Board adopted the reasoning of the Seventh Circuit in Hooker Chemicals, supra and Peoria Painting, supra. The Board's decision continues:
 
 
 25
 We agree fully with the Seventh Circuit's observation that the wording of Section 8(d) and its legislative history indicate that the method Congress chose to serve the purpose of facilitating the involvement of the mediation services "was to assign to one party, the initiating party, a fixed and definite responsibility for notifying the mediation services." Hooker Chemicals Corp. v. NLRB, above, 573 F.2d at 970.
 
 B. Legislative History
 
 26
 The Unions contend that the legislative history of Section 8(d) "compels the conclusion, that Congress intended the 'cooling off period' to mandate maintenance of the status quo by both parties irrespective of which party gave notice of contract opening." In support of this contention the Unions rely on a Senate report and the statement of Senator Taft. The use of the term "notice" throughout the legislative history without clarification as to whether it is the sixty day notice period of section 8(d)(1) and (4), or the thirty day notice period of section 8(d)(3) makes the legislative history ambiguous. What can be surmised from the legislative history, however, supports the Board's current interpretation of the LMRA.
 
 
 27
 The Senate Report, cited by the Unions, states in relevant part:
 
 
 28
 Under this section, parties to collective agreements in the future would be required to give 60 days' [sic] notice in advance of the terminal date, if they desire to terminate or amend. Should the parties fail to agree on a new contract in the next 30 days, the party taking the lead in refusing the old contract has the duty to notify the new Federal Mediation Service of the impasse. Should the notice not be given on time, irrespective of the presence or absence of a 60-day clause in the collective agreement, it becomes an unfair labor practice for an employer to change any of the terms or conditions specified in the contract for 60 days or to lock out his employees. Similarly, it is an unfair labor practice by a union to strike before the expiration of the 60-day period.
 
 
 29
 S.Rep. No. 105, 80th Cong., 1st Sess. (1947) (emphasis added), reprinted in, 1 Legislative History of the National Labor Management Relations Act 1947, 407, 430 (1959).
 
 
 30
 The Unions argue that "notice" in the emphasized sentence refers to the thirty day notice to mediation services mentioned in the previous sentence, and that the report therefore supports their position that untimely filing of the notice to mediation services extends the time in which the terms of the contract must be followed. Given the other references to the sixty day period in the emphasized sentence and the following sentence, the Board's present construction of "notice" in the emphasized sentence as referring to the sixty day period provided in Section 8(d)(4) is more persuasive. Section 8(d)(4) refers only to the "period of sixty days" during which the parties to the agreement cannot resort to strike or lockout. The Report makes no reference to an independent thirty day period following an untimely mediation notice.
 
 
 31
 Senator Taft's statement,[4] likewise, may properly be interpreted as referring to the sixty day notice period and not to the thirty day notice to the mediation services. The Seventh Circuit in Hooker Chemicals, 573 F.2d at 968, finding Senator Taft's statement "inconclusive" concluded:
 
 
 32
 Nothing in the statement suggests that if the initiating party gives late notice to the mediation services, the noninitiating party is precluded from exercising its right to strike or lock out until the mediation services have had 30 days to intervene, even if this exceeds the contract expiration date.
 
 
 33
 The Unions also rely on a report of the Watchdog Committee, S.Rep. 986, 80th Cong., 2d Sess. 15 (1948), established by Congress to monitor section 8(d) and other amendments to the LMRA. The relevant portions of this report are set out in Hooker Chemicals 573 F.2d at 968. We agree with the Seventh Circuit that
 
 
 34
 The only clear indication of legislative intent that can be discerned from this report is that the burden of notifying the mediation services is on the initiating party, a concept clearly expressed by the language of the statute.
 
 
 35
 Id.
 
 C. Policy Consideration
 
 36
 The Board, in explaining the reversal of its prior decisions in Peoria Painting and Hooker Chemicals said in part:
 
 
 37
 As found by the Seventh Circuit in denying enforcement to Hooker Chemicals [sic], the concept of shifting the burden of filing the 8(d)(3) notice of dispute to the noninitiating party in order to establish a uniform 30-day mediation requirement is a matter of policy that simply is not reflected in the statutory language of Section 8(d).
 
 
 38
 In further defense of its construction of the statute, the Seventh Circuit in Hooker Chemicals, 573 F.2d at 970, said:
 
 
 39
 The restraint imposed on the initiating party may be viewed as an incentive to fulfill its statutory duty to give timely notice; the initiating party need only perform its statutory duty to avoid the restraint. Accordingly, we perceive no injustice in permitting the noninitiating party to use economic weapons after contract expiration even though the initiating party may be restrained from such actions as a result of its own default.
 
 
 40
 We agree with the Seventh Circuit. The Board's current interpretation provides the needed incentive to insure notification of the mediation services, since the initiating party will not wish to be left without resort to economic actions.V. Conclusion
 
 
 41
 We conclude that (1) the Board's current interpretation of the statute is "reasonably defensible"; and (2) in reversing its prior interpretation the Board "has reached a fair and reasonable balance" and has adequately explained the basis of its current interpretation. Accordingly we affirm the decision of the Board and deny the petition for review.
 
 
 42
 AFFIRMED.
 
 
 
 *
 The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation
 
 
 [1]
 As set forth later herein, section 8(d)(3) of the LMRA, 29 U.S.C. Sec. 158(d)(3) provides for a 30 day notice to the Federal Mediation and Conciliation Service and to State or Territorial mediation agencies
 
 
 [2]
 The Southern California locals and the Phoenix local filed separate charges, and initially separate complaints issued. Thereafter the Board ordered consolidation of the cases, and a consolidated amended complaint issued
 
 
 [3]
 The local unions urge that they were not the initiating party because they did not wish to modify the collective bargaining agreement, but rather to continue it for one year. Nevertheless, the administrative law judge correctly found that since the local unions were first to notify United Artists that they wished to terminate or modify the collective bargaining agreement, they were the initiating parties. NLRB v. Mar-Len Cabinets, Inc., 659 F.2d 995 (9th Cir.1981); Hooker Chemicals and Plastics Corp. v. NLRB, 573 F.2d 965 (7th Cir.1978); United Furniture Workers, Local 270 v. NLRB, 336 F.2d 738 (D.C.Cir.), cert. denied, 379 U.S. 838, 85 S.Ct. 73, 13 L.Ed.2d 44 (1964). The designation of initiating party does not sway from the union to employer depending upon the bent of negotiations, but remains fixed on the party who initially provided notification of its desire to terminate or modify the collective bargaining agreement. Mar-Len, 659 F.2d at 998
 
 
 [4]
 Senator Taft states in relevant part:
 We have provided in the revision of the collective-bargaining procedure, in connection with the mediation process, that before the end of any contract, whether it contains such a provision or not, either party who wishes to open the contract may give sixty days notice in order to afford time for free collective bargaining, and then for the intervention of the Mediation Service. If such notice is given, the bill provides for no waiting period except during the life of the contract itself. If, however, either party neglects to give such notice and waits, let us say, until 30 days before the end of the contract to give the notice, then there is a waiting period provided during which the strike is an unlawful labor practice for sixty days from that time, or to the end of the contract and thirty days beyond that time. In that case there is a so-called waiting period during which a strike is illegal, but it is only brought about by the failure of the union itself to give the notice which the bill requires shall be given. So it seems to me to be no real limitation of the rights of labor unions. 93 Cong.Rec. 3955 (1947), reprinted in 2 Legislative History of the Labor Management Relations Act 1947, 1015 (1948).