The **SINGER COMPANY**, Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD**, Respondent.

No. 72–1800.

United States Court of Appeals, Tenth Circuit.

June 22, 1973.

Robert C. Poole, Albuquerque, N. M., for petitioner.

Fredric Sagan, Washington, D. C. (Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Elliott Moore, Acting Asst. Gen. Counsel, Washington, D. C., on the brief) for respondent.

Before PICKETT, HILL and DOYLE, United States Circuit Judges.

HILL, Circuit Judge.

The Singer Company (Singer), petitions this court, pursuant to § 10(f) of the National Labor Relations Act, 29 U.S.C. § 160(f), to set aside the order of the NLRB issued on October 31, 1972, finding Singer to have violated §§ 8(a)(1) and (3) of the Act, 29 U.S.C. §§ 158(a)(1) and (3), in the course of the Union's representation campaign. The Board filed its cross-application pursuant to § 10(e) of the Act, 29 U.S.C. § 160(e), for enforcement of its order.

The Board found that Singer had violated §§ 8(a)(1) and (3) in prohibiting certain employees from wearing shirts displaying the insignia of the International Association of Machinists and Areospace Workers, AFL–CIO (IAM), the union involved in the representation campaign at Singer's Albuquerque, New Mexico, plant. The Board additionally found that Singer, by its actions, statements and information disseminated during the campaign, had restrained and coerced its employees in violation of 29 U. S.C. § 158(a)(1).

Singer had operated a calculating machine production plant at San Leandro, California, where the Union had represented the employees of the plant for the preceding 25 years. In an effort to attain lower labor costs and thereby to compete more favorably with foreign-produced calculating machines which Singer asserted had caused a decline in its share of the domestic market from 60% to 6% between 1967 and 1970, Singer in 1969 established a new manufacturing facility at a temporary location in Albuquerque, New Mexico. The new plant was moved to its permanent facility in August, 1970. In June, 1970, the Union began its campaign to organize and represent the employees of the new plant. The campaign was characterized by the distribution of extensive literature and the numerous general meetings with the employees by both Singer and IAM. On September 11, 1970, the Union notified Singer of its campaign activities, and on October 22, 1970, the Union requested recognition on the basis of a card check. Singer refused and insisted on an election, which was held on December 10, 1970. The election resulted in the Union's being rejected by a 63–44 margin. The Union filed its objection to certain preelection conduct by Singer and, following a hearing, the election was set aside and a second election was ordered. Singer maintains the Board's resolution of the issues raised in regard to the alleged misconduct by Singer was either erroneous or not supported by substantial evidence.

The first alleged misconduct involved an incident on September 17, 1970, when seven employees reported to work wearing shirts colored in a manner and with insignia displayed to identify them as Union shirts. The men were told by an officer of Singer that they would not

be permitted to work in the plant while wearing the shirts. It is clear that "[t]he right to wear union insignia on the employer's premises during working hours in guaranteed by § 7 in the absence of special considerations." Serv-Air, Inc. v. NLRB, 395 F.2d 557, 563 (10th Cir. 1968), cert. denied, 393 U.S. 840, 89 S.Ct. 121, 21 L.Ed.2d 112. Singer argued before the Board this prohibition was necessary in view of interfactional hostilities at the plant and the possibility of further disruption if the shirts were permitted in the plant. As proof, Singer points to a drop in production on this particular day. The Board, however, found the evidence to be inconclusive that the drop in production was due primarily to the wearing of the shirts. In fact, the Board found it reasonable to infer that any decrease in production was attributable to Singer's actions in suppressing the wearing of the shirts.

The next allegation of misconduct regards an asserted coercive interrogation of employees by a company supervisor as to the union sympathies of employees under him. Singer maintains the alleged coercive interviews were nothing more than casual conversations. The Board, on the evidence presented, concluded the employees had been the subject of coercive interrogation by Singer.

██ Closely related is an allegation that Singer had exerted coercive pressure on its employees through statements made by it during its opposition campaign. Singer contends the statements made by it during its campaign were merely an attempt to disclose the economic facts as they existed and to indicate possible eventualities if the economic situation changed unfavorably for Singer. An employer's statements which are not coercive are protected under 29 U.S.C. § 158(c) and cannot form the basis for a § 158(a)(1) violation.[1] The test of whether it is coercive speech is whether the employer's statements convey a threat of economic reprisal taken solely on the employer's volition in the event the union campaign proves successful.[2] The Board found the dominant theme of Singer's antiunion campaign was one of strikes, loss of jobs and closure of the plant itself, punctuated by statements attributing the loss of 14,000 jobs to unionization at various plants, and further illustrated by specific examples of other plants which had, after voting for union representation, been closed with an attendant loss of jobs to the work force. "The primary responsibility of determining whether statements are to be construed as threats or mere expressions of opinion lies with the Board . . . and the Board's decision will not be disturbed on appeal unless the record as a whole does not reveal substantial evidence in support of the finding." N. L. R. B. v. Acker Industries, Inc., 460 F.2d 649 (10th Cir. 1972).

██ On application for enforcement of the Board's order, this court must "review the record as a whole to determine whether there exists substantial evidence to support the board . . ." that is, "such evidence as a reasonable mind might accept as adequate to support a conclusion." N. L. R. B. v. Meinholdt Mfg., Inc., 451 F.2d 737, 738 (10th Cir. 1971). There is ample evidence to support the conclusions of the Board.

The relief requested by the petition for review is denied, and the Board's cross-application for enforcement of its order is granted. A judgment shall be entered accordingly.

1. N.L.R.B. v. Automotive Controls Corp., 406 F.2d 221 (10th Cir. 1969).

2. N.L.R.B. v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969); N.L.R.B. v. Automotive Controls Corp., *supra*.