**The DAYTON TIRE AND RUBBER COMPANY, a Division of Firestone Tire and Rubber Company, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 77–1106.

United States Court of Appeals, Tenth Circuit.

Argued Aug. 11, 1978.

Decided Jan. 17, 1979.

---

Edward E. Soule, Oklahoma City, Okl., and Thorley C. Mills, Jr., Akron, Ohio, and Lytle, Soule & Emery, of counsel, Oklahoma City, Okl., for petitioner.

Paul J. Spielberg, Joseph A. Oertel, John S. Irving, John E. Higgins, Jr., Carl L. Taylor, Elliott Moore, attorneys and counsel, N. L. R. B., Washington, D. C., for respondent.

Before McWILLIAMS and BARRETT, Circuit Judges, and COOK, District Judge.*

H. DALE COOK, District Judge.

The petitioner in this case, The Dayton Tire & Rubber Company (Dayton) seeks review of an order of the National Labor Relations Board (Board), 227 NLRB No. 128, requiring it to reinstate, with back pay, Paul Grammont (Grammont), an employee of Dayton's found by the Board to have been discharged in violation of Sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act (29 U.S.C. §§ 158(a)(1) and 158(a)(3)). The respondent Board has cross-petitioned for enforcement of its order.

The administrative record before us reveals the following sequence of undisputed facts. On January 2, 1974, Grammont injured his back during the course of his employment with Dayton as a tire builder, a job that requires rather strenuous physical exertion. Grammont was hospitalized for a short time and was unable to return to work until the following May. On Friday, May 3, Grammont was examined by an orthopedic surgeon, who concluded that he was capable of returning to work. Grammont was advised by his attorney not to report for work until he received a medical report from the examining physician. The physician notified Dayton of his conclusions on May 3, but his report was not received by either Grammont or his attorney until May 10. Pursuant to his attorney's instructions, Grammont did not return to work on Monday, May 6. At the end of the day on May 8, Grammont was discharged by Dayton, allegedly for violating a company rule prohibiting three days of unreported ab-

sence. Unfair labor practice charges were subsequently filed against Dayton, based in part upon Grammont's discharge. A hearing on those charges was held before an administrative law judge on July 9–11, 1974, at which one of the issues for determination was whether Grammont was discharged because he failed to return to work or because of his union activity.

On July 15, 1974, prior to the decision of the administrative law judge, the State Industrial Court of Oklahoma conducted a hearing on Grammont's claim for benefits under the Oklahoma Workmen's Compensation Law, arising from his injury of January 2, 1974. On July 17, the State Industrial Court trial judge found that Grammont had sustained a 27.5 per cent permanent partial disability to his body as a whole and awarded him compensation for a total of 137.5 weeks. (R. 1102) That order was affirmed on August 28, 1974 by the State Industrial Court, sitting en banc. (R. 1104)

The decision of the Board's administrative law judge was issued on September 4, 1974. The judge found that Grammont was the leading union adherent among the voting unit employees and that Dayton knew of his involvement with the union. For that reason, Dayton was hostile toward Grammont and entertained a strong desire to discharge him because of his union activities. The judge concluded that Grammont's discharge was motivated in significant part by Dayton's animus toward him because of his union activities and was therefore in violation of 29 U.S.C. §§ 158(a)(1) and 158(a)(3). The administrative law judge recommended that the Board order Dayton to make Grammont whole for any loss of earnings suffered by reason of the discrimination against him and to offer him immediate and full reinstatement to his former position, or to a substantially equivalent one. (R. 1274–1275) On March 13, 1975, the Board affirmed the findings of the administrative law judge and adopted his recommended order as its own. (R. 1302–1303)

* Of the Northern, Eastern and Western Districts of Oklahoma, sitting by Designation.

Dayton refused to reinstate Grammont, taking the position, which it maintains to this date, that the determination of disability made by the State Industrial Court of Oklahoma relieved it of the obligation of complying with the Board's order, for the reason that Grammont's physical condition was such that he was incapable of performing his job adequately. The Board responded by issuing a Notice, on March 5, 1976, (R. 1304–1305) and Amended Notice, on March 10, 1976, (R. 1306–1307) of a hearing to determine the merits of Dayton's reasons for refusing to reinstate Grammont. That hearing was held on May 25, 1976. On August 23, 1976, the administrative law judge found that the Industrial Court award was not determinative of the issues before the Board and that, under the circumstances of the case, Grammont should be given an opportunity to attempt the performance of his former job. The judge also found that, in view of Grammont's disability, Dayton's liability for back pay should not begin until July 17, 1974, the date of the Industrial Court award, and recommended that the Board reaffirm its order of March 13, 1975, modifying only the commencement date of back pay liability. (R. 1311–1318) On January 11, 1977, the Board affirmed and modified its prior order as recommended by the administrative law judge. (R. 1326–1327) It is that order of the Board which is now before this Court for enforcement and review.

In its petition for review, the petitioner does not challenge the validity of the Board's underlying finding of a discriminatory discharge in violation of 29 U.S.C. §§ 158(a)(1) and 158(a)(3), and that issue is therefore not before us. Petitioner challenges only the remedy ordered by the Board, contending that neither the reinstatement order nor the date selected for commencement of back pay liability is supported by substantial evidence on the record considered as a whole. Dayton's primary argument is, as it was throughout the administrative proceedings, that the order of the State Industrial Court of Oklahoma relieves it of the obligation of complying with the Board's reinstatement order.

In reviewing a final order of the National Labor Relations Board, this Court has the authority to " . . . enter a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the Board. . . . " 29 U.S.C. §§ 160(e) and (f). *See also N. L. R. B. v. Brown,* 380 U.S. 278, 85 S.Ct. 980, 13 L.Ed.2d 839 (1965). The findings of the Board with respect to questions of fact are conclusive if supported by substantial evidence on the record considered as a whole. 29 U.S.C. §§ 160(e) and (f); *N. L. R. B. v. Pipefitters Local 638,* 429 U.S. 507, 97 S.Ct. 891, 51 L.Ed.2d 1 (1977).

> Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," [citation omitted] and it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. [citations omitted]

*N. L. R. B. v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939). *See also Singer Company v. N. L. R. B.,* 480 F.2d 269 (10th Cir. 1973). Substantial evidence is evidence furnishing a substantial basis in fact from which the fact in issue can reasonably be inferred. *N. L. R. B. v. Okla-Inn,* 488 F.2d 498 (10th Cir. 1973). While the substantial evidence test controls our review of the Board's factual determinations, we also have the responsibility of assuring that the Board's decisions are reasonable and fair. *Universal Camera Corp. v. N. L. R. B.,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *St. John's Hospital & School of Nursing, Inc. v. N. L. R. B.,* 557 F.2d 1368 (10th Cir. 1977); *Pioneer Drilling Co. v. N. L. R. B.,* 391 F.2d 961 (10th Cir. 1968).

Upon a finding of an unfair labor practice, the Board has the authority " . . . to take such affirmative action including reinstatement of employees with

or without back pay, as will effectuate the policies of this Act . . . ." 29 U.S.C. § 160(c). The Board's power to select a remedy is a broad discretionary one, subject to limited judicial review. *Fibreboard Paper Products Corp. v. N. L. R. B.,* 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964). The Board's remedial order should not be disturbed unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act. *N. L. R. B. v. Rutter-Rex Manufacturing Co., Inc.,* 396 U.S. 258, 90 S.Ct. 417, 24 L.Ed.2d 405 (1969), *rehearing denied* 397 U.S. 929, 90 S.Ct. 895, 25 L.Ed.2d 109 (1970); *Fibreboard Paper Products Corp. v. N. L. R. B., supra; Love Box Co. v. N. L. R. B.,* 422 F.2d 232 (10th Cir. 1970). The policies subserved by the National Labor Relations Act include the promotion of industrial peace, the prevention of unfair labor practices and protection for victimized employees. *Golden State Bottling Co., Inc. v. N. L. R. B.,* 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973); *N. L. R. B. v. Warren Company, Inc.,* 350 U.S. 107, 76 S.Ct. 185, 100 L.Ed. 96 (1955); *Phelps Dodge Corp. v. N. L. R. B.,* 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271 (1941). In furtherance of those policies, an order requiring reinstatement and back pay is aimed at restoring the economic status quo which would have existed but for a company's unlawful discharge. *Golden State Bottling Co., Inc. v. N. L. R. B., supra; Social Security Board v. Nierotko,* 327 U.S. 358, 66 S.Ct. 637, 90 L.Ed. 718 (1946); *Phelps Dodge Corp. v. N. L. R. B., supra.*

## REINSTATEMENT

■ The petitioner has consistently maintained that the finding of permanent partial disability by the State Industrial Court of Oklahoma is binding upon the Board on the issue of whether Dayton should be required to reinstate Grammont. To the extent that the findings of the state agency can be considered inconsistent with those of the Board, the Board's findings are controlling on the issues before it. *See N. L. R. B. v. Western Meat Packers, Inc.,* 368 F.2d 65 (10th Cir. 1966); *N. L. R. B. v.*

*Stafford Trucking, Inc.,* 371 F.2d 244 (7th Cir. 1966); 29 U.S.C. § 160(a). However, the issues before the Board, namely whether Grammont's physical condition is such that (1) he is not qualified for reinstatement under the company's rules and regulations, (2) he is unable to perform the duties required by his job and (3) such re-employment could cause further physical harm to himself or to other company workers, were not before the State Industrial Court, which determined only that Grammont was entitled to benefits under the Oklahoma Workmen's Compensation Law. The State Industrial Court did not purport to decide the issues which subsequently came before the Board. The two agencies exist to serve different functions, and we believe that the findings made by the State Industrial Court cannot be considered inconsistent *per se* with the findings made by the Board, on different issues which are within the area of responsibility assigned to the Board by Congress. Having found that the determination of the State Industrial Court was not binding on the Board, we must consider whether the findings of the Board are supported by substantial evidence on the record considered as a whole.

At the May 25, 1976 hearing before the administrative law judge, Dayton introduced into evidence the transcript of the proceedings before the State Industrial Court of Oklahoma, and that evidence thereby became a basis for the judge's decision. The Industrial Court record includes a medical report indicating that Grammont had suffered no permanent partial disability. (R. 1101; 1314) While Grammont did testify at the State hearing that he did not feel that he could build tires, (R. 1065; 1066) he also testified that he was willing to try to perform either that job or some other job at the Dayton plant. (R. 1065–1067) At the hearing before the administrative law judge, Dayton produced two physicians who testified that, in their opinion, Grammont's disability would prevent him from performing the job of tire builder. (R. 870; 889) However, neither of those physicians had personally examined Grammont for the purpose of testifying at the hearing, and their opinions were based entirely upon the

findings of the State Industrial Court and the opinion of a physician which had been given almost two years earlier. (R. 873; 888) On cross-examination, one of the physicians testified that the finding by one doctor of no permanent partial disability might have been correct (R. 901) and that it was possible that Grammont could, if properly motivated, perform his job despite the extent and permanency of his disability. (R. 897; 901) In fact, that same physician had examined Grammont briefly on the day of his injury, and his diagnosis at that time was that the disability was neither permanent nor of such magnitude as to warrant sending him home. (R. 892–893) The record also reveals that the average production of a tire builder is 120 tires per shift (R. 848) and that before his injury, Grammont had produced up to 250 tires per shift. (R. 822) The administrative law judge also had before him the testimony of Grammont. That testimony revealed that following his State Industrial Court award, Grammont performed numerous jobs. He was employed as a school bus driver for several months (R. 774; 791) and worked at a fixture company painting with a spray gun, cutting lumber on a power saw and loading trucks, duties which involved lifting as much as 200 pounds. (R. 774–776; 778–781; 784) Grammont also worked for a furniture company building, moving and lifting furniture weighing up to 450 pounds. (R. 781–783)

In evaluating the sufficiency of the evidence on the issue of reinstatement, it must be remembered that Grammont was the victim of a discriminatory discharge and that reinstatement is the conventional correction for such an unfair labor practice. *N. L. R. B. v. International Van Lines,* 409 U.S. 48, 93 S.Ct. 74, 34 L.Ed.2d 201 (1972); *Phelps Dodge Corp. v. N. L. R. B., supra.* It should also be noted that, as the administrative law judge recognized, (R. 1316) if a reinstated employee fails to effectively perform his job, he may be discharged for cause. *Golden State Bottling Co., Inc., v. N. L. R. B.,* 401 F.2d 629 (5th Cir. 1968); *Southern Tours, Inc. v. N. L. R. B., supra.*

■ Based upon the record considered as a whole, we find that the Board's factual determinations on the issue of reinstatement are supported by substantial evidence, that the remedy of reinstatement was within the discretion of the Board and was reasonable and fair under the circumstances of this case and that the application of that remedy in this case will effectuate the policies of the National Labor Relations Act.

### BACK PAY

■ The finding of an unfair labor practice and discriminatory discharge is presumptive proof that some back pay is owed by the employer. *N. L. R. B. v. Madison Courier, Inc.,* 153 U.S.App.D.C. 232, 472 F.2d 1307 (1972); *N. L. R. B. v. Reynolds,* 399 F.2d 668 (6th Cir. 1968); *N. L. R. B. v. Mastro Plastics Corporation,* 354 F.2d 170 (2nd Cir. 1965), *cert. denied* 384 U.S. 972, 86 S.Ct. 1862, 16 L.Ed.2d 682 (1966). Consequently, because we have upheld the Board's reinstatement order, we are inclined to enforce the Board's general back pay award as being a reasonable exercise of its discretion under the circumstances of this case. However, the Board's modification of that general order, which provides that back pay liability shall commence on July 17, 1974, the date of the determination of the State Industrial Court of Oklahoma, requires closer scrutiny.

Ordinarily, the Board utilizes a two-stage procedure in unlawful discharge cases. The initial stage involves a determination of whether an unfair labor practice has been committed, and if so, whether a general order requiring reinstatement with back pay is appropriate under the circumstances. In such a proceeding the Board does not attempt to compute the amount of back pay owing. Following judicial enforcement of its general remedial order, the Board fixes the amount of back pay liability, either by negotiation or following an evidentiary hearing at which the employer is permitted to present evidence in mitigation of the gross amount of back pay computed by the Board. *See N. L. R. B. v. Deena Artware, Inc.,* 361 U.S. 398, 80 S.Ct. 441, 4 L.Ed.2d 400 (1960); *Nathanson v. N. L. R. B.,* 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952); *N. L. R. B. v. Nickey Chevrolet Sales, Inc.,* 493

F.2d 103 (7th Cir. 1974); *N. L. R. B. v. Bird Mach. Co.,* 174 F.2d 404 (1st Cir. 1949); *Wallace Corporation v. N. L. R. B.,* 159 F.2d 952 (4th Cir. 1947); *N. L. R. B. v. New York Merchandise Co.,* 134 F.2d 949 (2nd Cir. 1943). Prior to the second-stage back pay proceeding, the Board issues a back pay specification, containing detailed computations of the gross and net back pay due, and a notice of a hearing on those issues before an administrative law judge. *See* 29 C.F.R. §§ 101.16, 102.52–102.59. None of the procedures for back pay proceedings were followed prior to the hearing on May 25, 1976. In fact, the notices of that hearing (R. 1304–1307) specifically provided that the issues to be resolved at that hearing were limited in scope to the reinstatement portion of the Board's prior remedial order. Despite this limitation, the administrative law judge recommended, and the Board ordered, a modification of Dayton's back pay liability. Under the circumstances, fundamental fairness, as well as the Board's own regulations, required proper notice and an opportunity for the employer to present evidence on the issue of its back pay liability before such liability could be modified. To the extent that such an issue may have been properly before the administrative law judge, his findings in regard thereto are not supported by substantial evidence. There was no testimony presented at the hearing as to the date on which Grammont became physically capable of performing his former job, and, in fact, the only evidence before the judge on that issue relevant to July 17, 1974 was the testimony of Grammont at the State Industrial Court hearing that he was incapable of performing as a tire builder on that date. The administrative law judge stated that "[a]scertainment of the precise date that Grammont became physically able to perform the work is no more possible than it has been for me to decide that he is in fact now able to do so. For . . . I am concluding only that [Dayton] should still be required to offer Grammont reinstatement." (R. 1318) Nevertheless, he proceeded to select the date of July 17, 1974 because " . . . I do not think I would be doing the parties a service by deferring this question to still another 'compliance stage.' And 'rough justice' impels me to seize upon the date of the Industrial Court's decision as the cut-off date." (R. 1318) Such a standard falls far short of that required for enforcement of an administrative order in this Court.

We believe that the issue of Grammont's physical ability to perform his former job, as well as all other issues which may be raised by the employer in mitigation of its back pay liability, should be determined administratively by the Board in compliance with its established procedures of notice and hearing. That is not to say that the date of July 17, 1974 may not ultimately be selected by the Board as the proper date of commencement of Dayton's back pay liability. We hold only that the method of selecting that date was improper and that that portion of the Board's order cannot be enforced on the record now before us.

Accordingly, the Board's order of January 11, 1977 is modified to eliminate the date of July 17, 1974 as the commencement date of the petitioner's back pay liability. As so modified, the Board's order requiring, in general terms, the reinstatement, with back pay, of Paul Grammont is enforced.