NATIONAL LABOR RELATIONS BOARD, Petitioner,

and

Stanley H. Egan and Donald R. Egan, Intervenors,

v.

The AMERICAN CAN COMPANY; United Steelworkers of America, and Local 5490 of the United Steelworkers of America, Respondents.

No. 80–1173.

United States Court of Appeals, Tenth Circuit.

Argued July 13, 1981.

Decided Aug. 31, 1981.

James S. Frank, Simpson, Thacher & Bartlett, New York City (Martin H. Zuckerman and Cecelia T. Roudiez, Simpson, Thacher & Bartlett, New York City, on the brief), for respondent American Can Co.

Richard Breen, Chicago, Ill. (David L. Gore, Bernard Kleiman, Chicago, Ill., with him on the brief), for respondents United Steelworkers of America and Local 5490 of the United Steelworkers of America.

Before DOYLE, McKAY and SEYMOUR, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The National Labor Relations Board has petitioned this court pursuant to § 10(e), 29 U.S.C. § 160(e), of the National Labor Relations Act, 29 U.S.C. §§ 151 *et seq.* The Board seeks enforcement of an order entered against the respondents, American Can Company, United Steel Workers of America (hereinafter called the "International Union") and Local 5490 on August 30, 1979.

The order finds that application of a superseniority clause to certain Union officers was unlawful. It directed the respondents to take remedial action. The employer, American Can Company, the International Union and the Local object to this order and take the position in this appeal that it should be denied enforcement.

The Company, a national operation, had one of its plants in Denver, Colorado until December 5, 1979. Aluminum cans were manufactured and sold there.

Beginning in 1966, the employees at the Denver plant were covered by a collective bargaining agreement between the Company and the International Union. The particular agreement in this case covered a term from February 15, 1974 to February 28, 1977. Local 5490 represented the production and maintenance employees at the Denver plant; the membership averaged about 40 persons.

The agreement contained a general rule that layoffs and recalls from layoffs would be in accordance with employee seniority.

John D. Burgoyne, Asst. Gen. Counsel, National Labor Relations Board, Washington, D. C. (William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel; Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., with him on the brief), for petitioner.

Thus, those with the longest continuous service were the last to be laid off and the first to be recalled. However, another clause in the agreement contained the provision that is particularly applicable here, that of superseniority. It reads as follows:

SuperSeniority

11.12 At each location covered by this agreement, super-seniority shall apply to a total of not more than ten local union officers and grievance committeemen who, notwithstanding their positions on the seniority roster, shall have preferential seniority in case of layoff or recall, provided there is work available which they can perform. The employees to whom super-seniority will apply will be designated to the company in writing. [R. 204]

In September of 1975, in accordance with the above provision, the Local Union submitted a list of ten union officials for whom it claimed superseniority. In October, 1975, the Company informed the Union that it would cease production at the Denver plant in early December. As is usual in this kind of situation, the International Union removed all of the officers of the Local, and appointed a staff representative, Wayne Anzick, as administrator of Local 5490. On December 1, 1975, again in conformity with normal procedure, Anzick reappointed all of the officers of Local 5490. Soon thereafter, on December 5, 1975, the Company laid off all but eleven employees who were retained to assist in closing down the plant. Two of these, C. E. Bugh and D. R. Howard, were retained on the basis of superseniority. On January 5, 1976, two employees, W. S. Miller and S. Schneider, were recalled on the basis of superseniority. Following general layoffs in February, the only employee on the job was C. A. Burton. On March 3, 1976, the Company confirmed with Anzick that superseniority was still claimed for Union officers. On May 20, 1976, Local 5490 was dissolved. Anzick notified the Company of this fact and indicated that supersen-

iority was no longer claimed for union officers on May 26, 1976. On May 25, 1976 [1] Howard was recalled on the basis of superseniority, and worked until laid off on September 2, 1976.

The recalls and retentions which are at issue here are those having to do with Schneider and Howard. The exercise of superseniority as to Bugh and Miller is unchallenged. This is apparently because both men were grievance committeemen and also served as stewards. Retention of a third employee, C. Thompson, was originally challenged, but the parties now apparently agree that Thompson was retained on the basis of specific job qualifications. All other employees recalled or retained had sufficient seniority so that they would have been recalled or retained without regard to superseniority. The parties all agree that but for the application of superseniority to Howard and Schneider, other employees with longer service would have been retained or recalled.

Howard was a trustee of Local 5490, while Schneider served as a guard. The Union constitution describes their respective duties as follows:

Duties of Guards. It shall be the duty of the Guards to take charge of the door and see that no one enters who is not entitled to do so.

Duties of Trustees. It shall be the duty of the Trustees to have charge of the hall and all property of the Local Union, subject to the direction of the Local Union, and perform such other duties as the Local Union may require. [R. 542]

At the hearing before the Administrative Law Judge no evidence was presented regarding the duties that were actually performed by Schneider. There was testimony by Charles Burton, former President of Local 5490, that Howard served as Chairman of the Health and Safety Committee, in addition to his duties as Trustee. Burton testified that Howard continued to raise

---

1. The Administrative Law Judge found that Howard was recalled on April 25, 1976. [R. 641]. No explanation appears in the record for the Board's use of the May, 1976 date. It

should also be noted that some of the facts set forth above are not included in the Board's opinions, but were extracted from the Administrative Law Judge's opinion, R. 636, *et seq.*

safety problems with the Company up until his final termination in September of 1976.

The Administrative Law Judge and at least one member of the Board found this testimony irrelevant on the ground that superseniority was available only to grievance committeemen and union officers. It is not disputed that Howard was accorded superseniority on the basis of his position as trustee, and not as a result of his activity on the Health and Safety Committee.

### History and Background

Charges were filed against all the respondents by two former employees, S. H. Egan and D. R. Egan, who were members of Local 5490 before its decease. On the basis of these charges, the NLRB issued complaints against all of the respondents charging that the Union had violated § 8(b)(1)(A) and (2) of the National Labor Relations Act[2] and that the Company had violated the § 8(a)(1) and (3) of the Act.[3] Following a hearing held in May of 1977, the Administrative Law Judge recommended, on November 4, 1977, that the Board should order remedial action.

The Board issued two opinions. The first of these was issued April 5, 1978, 235 NLRB 704. This was a two to one decision. Chairman Fanning and Member Truesdale found that respondents had not violated the NLRA, and dismissed the complaint. The majority held superseniority accorded union officers to be presumptively lawful, and found that the General Counsel had not produced sufficient evidence to overcome that presumption. Member Penello dissented, indicating that in his view superseniority is presumptively unlawful when extended to union officers, and had been invalidly applied in this case.

On May 2, 1978, the Egans petitioned this court for a review of the Board's decision. Thereafter, the Board moved for permission to withdraw the record in order to reconsider its decision. This motion was granted October 23, 1978. On August 30, 1979, the Board issued a Supplemental Decision and Order, 244 NLRB No. 78. There three Board members found that the respondents had violated the NLRA and ordered remedial action; two members dissented. The Board then petitioned this court for enforcement of its order. We conclude that the action of the Board should be affirmed and that the order should be enforced.

### Statement of the Problem

The question presented in this review is whether the grant of superseniority to Howard and Schneider impermissibly interfered with the rights of other American Can Company employees to refrain from union activities or by discrimination in a term of employment impermissibly encouraged participation in union activities.

Section 7 of the National Labor Relations Act, 29 U.S.C. § 157, requires that the employee shall have the right to refrain from any or all union activities. Section 8 of the NLRA prohibits certain types of employer conduct. It reads, in part:

(a) It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of rights guaranteed in Section 157 of this title;

\* \* \* \* \* \*

(3) by discrimination in regard to hire or tenure or any term or condition of employment to encourage or discourage membership in any labor organization ... 29 U.S.C. § 158(a)(1), (3).

Section 8(a)(3) goes on to make an exception allowing a union and an employer, in a collective bargaining agreement, to require employees to maintain union membership as a condition of employment. This statute states that only payment of dues and initiation fees may be required as a condition of membership in a union. Section 8(b) prohibits restraint or coercion of employees by unions in the exercise of the rights guaranteed in Section 157 of the general title. Subsection (2) provides that it is an unfair

---

**2.** 29 U.S.C. §§ 158(b)(1)(A) and (2).

**3.** 29 U.S.C. §§ 158(a)(1) and (3).

labor practice for a union to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3). 29 U.S.C. § 158(b)(1)(A) and (2).

The encouragement or discouragement prohibited by Section 8 is not limited to incentives or disincentives to union membership. Rather, it includes encouragement or discouragement of participation in union activities. *Radio Officers' Union v. N. L. R. B.*, 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed.2d 455 (1954). Thus the question boils down to whether the grant of superseniority to Howard and Schneider interfered with the rights of American Can Company employees to refrain from union activities, or by discrimination impermissibly encouraged participation in union activities.

### Is the Board's Order Enforceable?

The American Can Company's argument is that the court should deny enforcement of the Board's order on the ground that the order is based on conflicting rationales. The order itself recognizes that "the Board members have widely divergent views on [these issues]." It characterizes the decision and order as being based upon "aggregate majority." It cannot be denied that there is a remarkable division in viewpoints on the Board with respect to the issue before us.

Chairman Fanning and Member Truesdale, in the original (three member) decision, expressed their view that superseniority clauses are presumptively lawful when applied to union officers regarding layoff and recall. Their suggestion is that the General Counsel may be able to overcome this presumption of validity if it can be shown that the union officers involved contribute nothing to the ability of the union to represent unit members effectively and efficiently. Their rationale is that the descriptions of the duties of guards and trustees in the Union constitution were insufficient evidence to overcome the presumption.

In the second opinion, Chairman Fanning and Member Truesdale clarified their position. 244 NLRB No. 78. They do not believe that the hope of attaining a position in the Union which carries with it the "remote and contingent" benefits of superseniority would encourage employees to be active or good union members. Superseniority benefits, they say, only encourage employees to agree to serve as officers or stewards; such encouragement they regard as lawful because all employees benefit from services rendered by officers and stewards. *See also*, Chairman Fanning's dissent in a similar case, *Dairylea Cooperative, Inc.*, 219 NLRB 656 (1975), *enforced sub nom. N.L. R.B. v. Milk Drivers & Dairy Employees Local 338*, 531 F.2d 1162 (2d Cir. 1976).

Members Jenkins and Penello filed a separate concurrence in support of the Board's second order. In their view, any provision of superseniority to union officers is presumptively invalid. They argue that superseniority is to be accorded to union officials whose activities facilitate employee rights and whose presence on the job is required for proper performance of those functions. Thus, superseniority is justifiable only to ensure continued presence of stewards on the job, because they handle grievances as they arise and generally administer collective bargaining agreements. In the view of Jenkins and Penello, union officers can generally perform their functions relating to administration and representation of employee interests without being present on the job. Thus, they would allow superseniority for union officers only if the union can show that their presence is necessary in the grievance settlement process. They do not consider their presence to be ordinarily necessary.

Member Murphy cast the third vote in support of the Board's final order in the case. In her view, superseniority may be lawfully extended to union officers whose functions relate in general to furthering the bargaining relationship. Her argument is that such clauses are presumptively lawful, and that, therefore, the General Counsel bears the initial burden of demonstrating that a superseniority clause is invalid as applied to particular union officials. Member Murphy has also concurred in *Union*

Carbide Corp., Chemical and Plastics Operations Division, 228 NLRB 1152 (1977), United Electrical Radio & Machine Workers of America, Local 623 (Limpco Manufacturing, Inc.) 230 NLRB 406, 408 fn. 12 (1977), aff'd sub nom. D'Amico v. N. L. R. B., 582 F.2d 820 (3d Cir. 1978). In this particular case, Member Murphy found that the descriptions of the duties of the trustees and guards in the Union constitution indicated that those officers have no duties which relate to furtherance of the bargaining relationship. Consequently, the burden shifted to the Union to demonstrate that such officers do, in fact, perform functions sufficient to justify superseniority privileges. In the absence of any such evidence in the case before her, she concluded that the respondents had violated the Act.

█ It is true that there are a variety of views held by the members of the Board. The present case is not the first in which the Board's order has been based on an "aggregate majority" of views. See e. g., Limpco Manufacturing, Inc., supra; Otis Elevator Co., 231 NLRB 1128 (1977). The Company here argues that this conflict among the Board members renders the order in this case unenforceable. The General Counsel has suggested the contrary view that the Board members really differ only as to burdens of proof, and that the ultimate issue in each case is whether superseniority is justified.

We are unable to agree with the General Counsel's characterization of the Board's views. Rather, it appears that two Board members would approve virtually all superseniority clauses based on their view that this type of encouragement of union service is desirable and permitted by the NLRA. Two of the Board members would allow the practice only for persons who perform steward-like functions, their view being that superseniority is discriminatory and violates the Act unless justified by clear business purposes. One other Board member would allow superseniority for those whose functions "in general" further the bargaining relationship. This is based on her view that the union need to maintain an effective

presence on the job justifies superseniority for such persons. These views represent a conflict on more than proper allocation of the burden of proof. At issue is the scope that can and should be allowed to superseniority provisions under the Act. We do not, however, accept the Company's argument that this conflict in views renders the Board's order in this case unenforceable.

Sections 10(e) and (f) of the NLRA grant the courts of appeals of the United States jurisdiction to review orders of the NLRB. The Courts are empowered to make and enter a decree enforcing, modifying and enforcing as so modified, or setting aside in whole or in part, the order of the Board. However, in reviewing Board orders, "[t]he findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive."

█ The Supreme Court in Beth Israel Hospital v. N. L. R. B., 437 U.S. 483, 500–501, 98 S.Ct. 2463, 2473, 57 L.Ed.2d 370 (1978), had occasion to expound general standards applicable to review of Board orders. The Supreme Court pointed out that it is the Board on which Congress conferred the authority to develop and apply fundamental national labor policy. It is to the Board that Congress entrusted the task of "applying the Act's general prohibitory language in light of the infinite combinations of events which might be charged as violative of its terms." The Court further said that if the Board is to accomplish the task which Congress set for it, it necessarily has to have the authority to formulate rules to fill the interstices of the broad statutory provisions. Ultimately, the problem is to balance the conflicting legitimate interests. The function of striking that balance to effectuate national labor policy is often difficult and delicate, but it is the responsibility which Congress gave to the Board, subject to limited judicial review. N. L. R. B. v. Truck Drivers, 353 U.S. 87, 96, 77 S.Ct. 643, 647, 1 L.Ed.2d 676 (1957). The role of the judiciary is narrow; a Board order is reviewed for consistency with the Act and for rationality, but if it satisfies these crite-

ria, the Board's application of the rule, if supported by substantial evidence on the record as a whole, is to be enforced. *See also N. L. R. B. v. Iron Workers,* 434 U.S. 335, 350, 98 S.Ct. 651, 660, 54 L.Ed.2d 586 (1978); *N. L. R. B. v. J. Weingarten, Inc.,* 420 U.S. 251, 266–267, 95 S.Ct. 959, 968, 43 L.Ed.2d 171 (1975); *N. L. R. B. v. Okla-Inn,* 488 F.2d 498 (10th Cir. 1973); *U. S. Soil Conditioning v. N. L. R. B.,* 606 F.2d 940 (10th Cir. 1979).

In the case at bar, there is no lack of clarity in the Board's opinion. Indeed, the Board members have made their views plain in three separate opinions. The members' reasoning and the resulting "aggregate majority" are clear. It would do no good to remand for clarification. It would only further delay the resolution of this case.

To our knowledge there is no decision which holds that the lack of a majority rationale renders the Board's orders unenforceable. To rule that an order is for this reason unenforceable would be contrary not only to sound jurisprudence, but common sense as well. Resolving disputes is one of the most important functions of a legal system, and to hold that all agency decisions must be based on a majority agreement and may not rest on alternative rationales for a result agreed to by a majority, would seriously hamper the decision-making process. Hopefully, a court would never permit enforceability of its orders to depend upon all of the judges of a multi-judge court giving opinions which jibe one with the other. Similarly, such a rule would not be justified as to NLRB orders.

It would be nice, of course, if the Board members' views provided us with a majority rationale in this case. Within limits which we believe to be established by the NLRA, the treatment of superseniority clauses is an appropriate area for the operation of the Board's special expertise in balancing conflicting interests, so as to effectuate national labor policy. Thus, had a majority of the Board members agreed upon a "defensible construction" of the Act, we would defer to that judgment. *N. L. R. B. v. Iron Work-*

*ers, supra,* at 350, 98 S.Ct. at 660. There nevertheless remains a responsibility on this court to follow the statute and the Supreme Court decisions, and in so doing to enforce, modify or deny enforcement of the Board's judgment or decree. Although the court's function is limited, there is a role for it to play in defining the legal standards established by the NLRA. *N. L. R. B. v. Brown,* 380 U.S. 278, 85 S.Ct. 980, 13 L.Ed.2d 839 (1965); *Allied Chemical & Alkali Workers of America v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971). In light of the conflict of views on the Board, we are not required to adopt one particular viewpoint, and although we hesitate to add still another viewpoint to those that have already been expressed, we will proceed to expound a decision in accordance with the governing act of Congress.

### Analysis of the Problem in Consideration of the Decisions

The Supreme Court has had occasion to explain the Act's prohibition of encouragement or discouragement of union membership, and in that regard has made the following statement:

> The policy of the Act is to insulate employees' jobs from their organizational rights. Thus §§ 8(a)(3) and 8(b)(2) were designed to allow employees to freely exercise their right to join unions, be good, bad, or indifferent members, or abstain from joining any union without imperiling their livelihood. The only limitation Congress has chosen to impose on this right is specified in the proviso to § 8(a)(3) which authorizes employers to enter into certain union security contracts, * * * Congress intended to prevent utilization of union security agreements for any purpose other than to compel payment of union dues and fees. * * No other discrimination aimed at encouraging employees to join, retain membership, or stay in good standing in a union is condoned. *Radio Officers' Union v. N. L. R. B., supra,* 347 U.S. at 40–42, 74 S.Ct. at 335–336.

The Supreme Court has held also that "union membership" for the purposes of § 8(a)(3) includes "discrimination to discourage participation in union activities as well as to discourage adhesion to union membership. Similar principles govern the interpretation of union membership where encouragement is alleged." *Radio Officers' Union v. N. L. R. B., supra,* at 40, 74 S.Ct. at 335.

In one of the three cases dealt with in the *Radio Officers' Union* opinion, the Supreme Court found that a loss of seniority requested by a union and enforced by an employer as punishment for failure to pay union dues on time constituted discrimination to encourage union membership. The Court held that at least in the absence of a valid union security clause in a collective bargaining agreement, such discrimination violated the employee's right "to join in or abstain from union activities, without thereby affecting his job." 347 U.S. at 42, 74 S.Ct. at 336.

Not every action which encourages or discourages union membership is illegal. A possibility exists that such actions can be shown to be justified. *Radio Officers' Union, supra,* at 44, 74 S.Ct. at 337; *American Shipbuilding Co. v. N. L. R. B.,* 380 U.S. 300, 85 S.Ct. 955, 13 L.Ed.2d 855 (1965); *N. L. R. B. v. Brown, supra.* There need not be proof of specific intent to discriminate; proof of presumed intent is enough. *Radio Officers', supra,* 347 U.S. at 45–49, 74 S.Ct. at 338–340. There need not be proof of an actual encouraging or discouraging effect on the employee. *Id.* 48–52, 74 S.Ct. 339–342. The decision in *N. L. R. B. v. Erie Resistor Corp.,* 373 U.S. 221, 227–228, 83 S.Ct. 1139, 1144–1145, 10 L.Ed.2d 308 (1963), recognized that proof of a discriminatory intent can be sufficient proof of invalidity of an otherwise ambiguous act.

In sum, the Supreme Court has set forth the following principles, in the case of *N. L. R. B. v. Great Dane Trailers, Inc.,* 388 U.S. 26, 34, 87 S.Ct. 1792, 1797–98, 18 L.Ed.2d 1027 (1967):

First, if it can reasonably be concluded that the employer's discriminatory conduct was "inherently destructive" of important employee rights, no proof of an antiunion motivation is needed and the Board can find an unfair labor practice even if the employer introduces evidence that the conduct was motivated by business considerations. Second, if the adverse effect of the discriminatory conduct on employee rights is "comparatively slight", an antiunion motivation must be proved to sustain the charge *if* the employer has come forward with evidence of legitimate and substantial business justifications for the conduct. Thus, in either situation, once it has been proved that the employer engaged in discriminatory conduct which could have adversely affected employee rights to *some* extent, the burden is upon the employer to establish that he was motivated by legitimate objectives since proof of motivation is most accessible to him. (Emphasis in original.)

The above principles are said to be of controlling importance. In determining whether a particular discriminatory practice can be justified by legitimate objectives, or whether such practice should be regarded as illegal in spite of such justification, the competing interests represented by business objectives and employee rights have to be weighed. *N. L. R. B. v. Erie Resistor Corp., supra,* 373 U.S. at 229, 87 S.Ct. at 1145.

The Supreme Court has not decided a case similar to the present one. However, seniority rights have been recognized as an important part of employment. *See Radio Officers' Union v. N. L. R. B., supra,* and *N. L. R. B. v. Erie Resistor Corp., supra.* In the latter case, the Board's determination that a grant of superseniority to strike replacements and strikers who returned to work was inherently discriminatory and in violation of the Act was upheld by the Court. Also, in *Patterson v. Tulsa Local No. 513,* 446 F.2d 205 (10th Cir. 1971), *cert. denied* 405 U.S. 976, 92 S.Ct. 1202, 31 L.Ed.2d 251 (1972), we held that a seniority clause allowing motion picture machine operators to "bump" less senior operators from their jobs violated §§ 8(b)(1)(A) and (b)(2).

The Supreme Court in *Aeronautical Industrial District Lodge 727 v. Campbell*, 337 U.S. 521, 69 S.Ct. 1287, 93 L.Ed. 1513 (1949), considered a clause granting superseniority to union chairman. Under 50 U.S.C. § 308, World War II veterans returning to work following the war were entitled to return to prior jobs with seniority rights unaffected by their absence due to service in the armed forces. Three veterans challenged the application of a superseniority clause to union chairman during a layoff. They asserted that the superseniority clause violated their rights under 50 U.S.C. § 308 by causing the retention of union chairmen with less service seniority than the veterans. The Court said:

> One of the safeguards insisted upon by the union for the effective functioning of collective bargaining is continuity in office for its shop stewards or union chairmen. To that end provision is made, as it was here, against laying them off merely on the basis of temporal seniority. Because they are union chairmen they are not regarded as merely individual members of the union; they are in a special position in relation to collective bargaining for the benefit of the whole union. To retain them as such is not an encroachment on the seniority system but a due regard of union interests which embrace the system of seniority rights. 337 U.S. at 527, 69 S.Ct. at 1290.

The Court also stated: "Because a labor agreement assumes the proper adjustment of grievances at their source, the union chairmen play a very important role in the whole process of collective bargaining. Therefore it is deemed highly desirable that union chairmen have the authority and skill which are derived from continuity in office." 337 U.S. at 528, 69 S.Ct. at 1290–91. The holding was that veterans, like other employees, were subject to superseniority clauses. The Court did not consider the issue of the validity of superseniority clauses under the NLRA.

The NLRA has considered the validity of superseniority clauses several times recently. The first of these cases was *Dairylea Cooperative, Inc., supra*. In that case the then Chairman Murphy and Members Jenkins, Penello and Kennedy found a clause giving stewards top seniority for all purposes to be presumptively unlawful. The Board stated that the Act prohibits linkage of union activities to job benefits; generally, a union must maintain its own organization without subsidy from employees. The Board recognized superseniority clauses limited to layoff and recall of stewards as "well-established" and proper, because effective administration of bargaining agreements is facilitated by the continued presence of stewards on the job. Member Fanning dissented, stating that in his view stewards may lawfully be granted broad superseniority under the Act.

The Second Circuit affirmed the *Dairylea* decision and recognized the general policy in the Act of insulating employees' jobs from union activities. The court held that it is reasonable to infer that superseniority benefits encourage union activity. A union can prevail in such a case if a legitimate and substantial business justification is demonstrated, but the desire to encourage employees to serve as stewards is not a sufficient justification. *N. L. R. B. v. Milk Drivers & Dairy Employees Local 338, supra*. See also *N. L. R. B. v. Local 443, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 600 F.2d 411 (2d Cir. 1979). *N. L. R. B. v. Auto Warehousers, Inc.*, 571 F.2d 860 (5th Cir. 1978) suggests a contrary view.

The Board in subsequent decisions has reiterated the view that superseniority clauses which go beyond layoff and recall for stewards must be justified by the Union. *Union Carbide Corp., Chemical & Plastics Operations Div., supra; Chauffeurs, Teamsters and Helpers Local Union No. 633*, 230 NLRB 81 (1977), *enforced without opinion* 578 F.2d 441 (D.C.Cir.1978); Connecticut Limousine Service, 235 NLRB 1350 (1978), *aff'd. in part sub nom. Teamsters Local 20 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. N. L. R. B.*, 610 F.2d 991 (D.C.Cir.1979).

The Board has addressed the validity of superseniority for union officers also. In Limpco Manufacturing, Inc., *supra*, the Board upheld the validity of a superseniority clause as applied to a union recording secretary. In that case it was said:

> [W]e do not consider that administration of the collective-bargaining agreement is limited solely to grievance processing or other "steward-like" duties performed at the workplace. What is at stake is the effective and efficient representation of employees by their collective-bargaining representatives. Certainly, the representational activities carried out by union officials involved in the administration of the collective-bargaining agreement on behalf of employees extend beyond the narrow confines of grievance processing. These encompass at the very least a functioning local to assert the presence of the union on the job. * * * [O]nce it has been initially established that the official responsibilities of the union officer in question bear a direct relationship to the effective and efficient representation of unit employees, then this officer is entitled to the benefit of the same presumption afforded to union stewards. 230 NLRB at 407, 408.

The language in *Limpco* is not unclear, but notwithstanding that, the decision rests on a conflict of views. Member Murphy concurred in the opinion, but made clear that she would find job retention clauses for union officers presumptively lawful. 230 NLRB at 408, fn. 12. Member Murphy, therefore, would not place an initial burden on the union to demonstrate a relationship between an officer's duties and unit representation. Chairman Fanning indicates continuing adherence to the view that superseniority clauses should be allowed broad applicability. 230 NLRB at 407, fn. 5. Members Jenkins and Penello dissented, again expressing the view that superseniority should be permitted only for those officials whose presence on the job is necessary for grievance settlement.

The *Limpco* decision was affirmed *sub nom., D'Amico v. N. L. R. B.*, 582 F.2d 820 (3d Cir. 1978). The view of the Third Circuit was that the neutrality required by § 8 of the NLRA is not absolute, but has to be read in light of the § 7 right to bargain collectively. The court found that the burden ought to be on the union to show substantial justification for the application of superseniority to an officer whose official duties as described in the Union constitution do not involve the collective bargaining process. The court accepted justification based on a showing of "official responsibilities"—"officially assigned responsibilities which helped to implement the collective bargaining agreement in a meaningful way." "Any less rigid interpretation * * * would leave substantial room to dilute the statutory neutrality principle without the requisite collective bargaining notification." 582 F.2d at 825. *Cf., Otis Elevator Co., supra.*

We are mindful that superseniority clauses discriminate with regard to tenure or term of employment. Employees who receive superseniority obtain a benefit in the nature of patronage which is not afforded to others. Where superseniority is provided to persons holding a union office, such clauses encourage participation in union activities. At the very least, these clauses encourage service in union offices by rewarding such service with privileges. Perhaps such clauses encourage employees to be active in the union. We do not agree with Member Fanning's view that superseniority clauses only become important to an employee after he has been asked to serve in a union office, but have no impact on the employee's decision to participate in union activities.

The conflict here is not so inherently destructive of important employee rights that it should be held to be unlawful in spite of legitimate justification. But where the conduct is such that an employee's rights could have been adversely affected, the burden is on the responsible party to come forward with proof of justification for the conduct. *N. L. R. B. v. Great Dane Trailers, Inc., supra*, 388 U.S. at 34, 87 S.Ct. at 1797–98. The Board seems to regard

these clauses as presumptively valid when limited to layoff and recall of stewards. We need not pass on the propriety of that approach or viewpoint. *See Aeronautical Industrial District Lodge 727 v. Campbell, supra.* As to union officers, we read the Board's opinions as holding that the union bears an initial burden of demonstrating that officers awarded superseniority have duties which relate directly to the effective and efficient functioning of the bargaining unit.

 We are satisfied that superseniority clauses are discriminatory and do "adversely affect employees' rights to some extent." *N. L. R. B. v. Great Dane Trailers, Inc., supra,* at 34, 87 S.Ct. at 1798. In the light of the Act's clear prohibition of discrimination and the Supreme Court's cases, it is our conclusion that those who are responsible for invoking or applying a superseniority clause to union officers must initially prove a legitimate and substantial purpose. The exact proof which will be sufficient has to depend on the surrounding circumstances of each case. The responsibility for development of such rules as may be appropriate in this area ought be left to the Board. We do say that in *D'Amico v. N. L. R. B., supra,* it is the Third Circuit's opinion that as a minimum the Act requires that the official duties and responsibilities of an officer who receives superseniority must help to implement the collective bargaining agreement in a meaningful way. We agree that a less demanding standard certainly would not satisfy the requirement that discrimination must be justified by legitimate and substantial business purposes.

 In the light of the standards mentioned, there is no problem in concluding that the application of superseniority to Howard and Schneider was unlawful. The duties of guards and trustees as set forth in the Union constitution do not contribute in any meaningful way to the implementation of a bargaining agreement. Howard's responsibilities on the Health and Safety Committee were separate and independent of his status as a union officer; these duties were not officially assigned to him as a union officer. The justification for his receiving superseniority benefits stands or falls on the basis on which it was given, his role as a union trustee. We conclude that as to both Howard and Schneider no substantial justification for the application of superseniority has been established, and therefore, the Board's conclusion that the respondents here violated the Act should be, and is affirmed.

*Analysis of the Remedy*

We finally consider the contention of the Company and the Unions as to the validity of the Board's order. The order directs that the Union and the Company cease and desist from invoking and permitting the invocation of superseniority "for other than a reasonable number of local union officers whose duties involve the administration of the agreement or the processing of grievances * * *."

The Company and the Unions are further ordered to make whole any wage losses suffered by employees who would have been recalled or retained but for the exercise of superseniority by Howard and Schneider.

The Company and the Unions are also required to post notices for 60 days in all plants and meeting halls frequented by employees covered by the collective bargaining agreement. The notices to be posted in substance advise that henceforth superseniority will be invoked only for proper union officers. It is this last aspect of the Board's order which the respondents find objectionable and contend should be altered.

The respondents urge that the Board's order in this case is a retroactive change in previously established rules, and ought not to be enforced against them. In the alternative, they contend that the remedy is overbroad and not justified by the violations.

As to the retroactivity contention: We disagree that this is an abrupt change in a previously announced rule. *Cf., Retail, Wholesale and Department Store Union v. N. L. R. B.,* 466 F.2d 380 (D.C.Cir.1972). In

*Dairylea*, the Board did not, as respondents suggest, adopt a rule that all superseniority clauses are lawful if limited to layoff and recall. *Dairylea* dealt with superseniority for stewards; superseniority limited to layoff and recall was recognized as lawful "on the ground that it furthers the effective administration of bargaining agreements on the plant level by encouraging the continued presence *of the steward* on the job." 219 NLRB at 658 (emphasis added).

We must reject the respondents' contention that the *Dairylea* opinion can be read to establish the lawfulness of superseniority clauses for all union officers if limited to layoff and recall. Indeed, *Dairylea* indicates the Board's view that superseniority clauses have "an inherent tendency * * * to discriminate against employees for union-related reasons," and the corresponding likelihood that the party asserting the legality of a superseniority clause might be called upon to justify the clause.

█ It does not appear that there are any Board opinions regarding superseniority clauses for union officials prior to Dairylea, *supra.* The fact that unions and employers may have been negotiating and enforcing such clauses for some time does not preclude the Board from finding such clauses improper when presented with the issue. An administrative agency can rule on a question of first impression in an adjudicative context. *See S. E. C. v. Chenery Corp.,* 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), *reh. denied* 332 U.S. 783, 68 S.Ct. 26, 92 L.Ed. 367 (1947), and *N. L. R. B. v. Bell Aerospace Co. Div. of Textron, Inc.,* 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974), where the court stated: "The Board is not precluded from announcing new principles in an adjudicative proceeding and the choice between rule-making and adjudication lies in the first instance within the Board's discretion." 416 U.S. 294, 94 S.Ct. 1771.

█ In the case at bar, adjudication can be viewed as particularly appropriate. There are a wide variety of circumstances in which superseniority might be asserted for union officers. "The Board thus has reason to proceed with caution, developing its standards in a case-by-case manner, with attention to the specific circumstances presented. The Board's judgment that adjudication best serves this purpose is entitled to great weight." 416 U.S. at 294, 94 S.Ct. at 1772. We, therefore, reject the respondent's contention that the Board's order is not to be enforced because of its retroactive impact.

█ We also disagree with the arguments of the respondents that the order is overbroad. The superseniority clause here is contained in a collective bargaining agreement between the International Union and the Company affecting employees at plants throughout the United States. Thus, the Unions' reliance on Reads, Inc., 228 NLRB 1402 (1977) is not correct. That case involved interrogation of a single employee by a store manager.

█ It is for the Board, not the courts, to determine how the effects of unfair labor practices are to be expunged. *N. L. R. B. v. Link-Belt Co.,* 311 U.S. 584, 600, 61 S.Ct. 358, 366, 85 L.Ed. 368 (1941).

> Section 10(c) * * * charges the Board with the task of devising remedies to effectuate the policies of the Act. The Board's power is a broad discretionary one, subject to limited judicial review. The relation of remedy to policy is peculiarly a matter for administrative competence. In fashioning remedies to undo the effects of violations of the Act, the Board must draw on enlightenment gained from experience. The Board's order will not be disturbed unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act. *Fibreboard Paper Products Corp. v. N. L. R. B.,* 379 U.S. 203, 216, 85 S.Ct. 398, 405–406, 13 L.Ed.2d 233 (1964) (citations omitted).

*See also N. L. R. B. v. Tonkawa Refining Co.,* 452 F.2d 900, 903 (10th Cir. 1971); *Dayton Tire & Rubber Co. v. N. L. R. B.,* 591 F.2d 566, 569–570 (10th Cir. 1979).

We agree with the Board's aggregate majority conclusion that a violation of the Act occurred in this case. The order seeks to correct that violation and to prevent future violations based on the same contract clause. Our view is that the Board's order is valid. It does not seek to achieve ends which are out of harmony with the policies of the Act.

Accordingly, we decline to modify or set aside that order.

\* \* \* \* \* \*

 The Company finally contends that it cannot be held responsible for application of the superseniority to Howard and Schneider; it contends that the Union bears sole responsibility for any violation of the Act in this case. The argument of the Company is based upon the fact that the Union names those to whom superseniority will apply. However, although the Company cannot conduct a full scale investigation as to the applicable facts, it certainly has access to some information without applying to union officers for information.

In *Union Carbide Corp., Chemical & Plastics Operations Div., supra*, it was found that an employer had violated § 8(a)(5) and (1) of the Act by refusing to apply superseniority rights to stewards regarding shift transfers. The employer in that case had relied on *Dairylea* for the view that superseniority for stewards must be limited to layoff and recall. The Board found that superseniority regarding shift retention was justified, because it served to protect the steward's continued presence in their respective departments. Thus, an employer may be found to be in violation of the Act for improperly allowing or improperly disallowing use of superseniority. In the case of union officers, the lawfulness of superseniority turns on the nature and extent of their collective bargaining duties. A company may thus have to determine the nature of a union officer's duties, an effort which may prove awkward.

The task of balancing such problems as are set forth above as against the need to enforce the provisions of the NLRA is the responsibility of the Board. The Supreme Court has expressed the proposition that both unions and employers are liable for violations of the Act which constitute discrimination in respect to encouragement of union membership. *Radio Officers' Union v. N. L. R. B., supra*. The Act itself contemplates such liability in the parallel provisions of § 8(a)(1) and (3), and § 8(b)(1) and (2). It cannot be denied that the Company here acceded to the Union's request and in doing so made the unlawful discrimination possible and effective. Therefore, we must refuse the request to overrule the Board's judgment that American Can Company is to be held responsible along with the Unions for the violations shown in this case.

Based upon the reasons set forth above, the Board's petition for enforcement should be and the same is hereby granted.