**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**WEATHERCRAFT COMPANY OF TOPEKA, INC., Respondent.**

No. 85–2804.

United States Court of Appeals, Tenth Circuit.

Nov. 9, 1987.

Collis Suzanne Stocking, Attorney, Rosemary M. Collyer, General Counsel, John E. Higgins, Deputy General Counsel, Robert E. Allen, Associate General Counsel, and Elliott Moore, Deputy Associate General Counsel, N.L.R.B., Washington, D.C., on the brief, for petitioner.

Richard D. Anderson and Jeffrey A. Chanay of Entz, Anderson & Chanay, Topeka, Kan., on the brief, for respondent.

Before SEYMOUR, MOORE, and BALDOCK, Circuit Judges.

SEYMOUR, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.8. The cause is therefore ordered submitted without oral argument.

The National Labor Relations Board has petitioned this court for enforcement of its order against Weathercraft Company of Topeka, Inc. (Weathercraft). The Board's order concluded that Weathercraft had committed an unfair labor practice by instituting unilateral modifications to a collective bargaining agreement without providing timely notice to state and federal mediation agencies as required by section 8(d)(3) of the National Labor Relations Act, 29 U.S.C. § 158(d)(3) (1982). The Board ordered Weathercraft to, inter alia, refrain from terminating or modifying the agreement until thirty days after it had provided notice under section 8(d)(3), and to make whole all employees and fringe benefit funds for losses suffered as a result of the unilateral modifications. Weathercraft contends that it did not bear the burden of providing notice under section 8(d)(3), and that the "make whole" remedy is unwarranted in any event. We find no merit in these arguments and grant enforcement of the order.

I.

The facts underlying this enforcement action are undisputed. Weathercraft, a roofing contractor, executed a collective bargaining agreement negotiated between the roofers union and the roofing contractors association, to be effective June 1, 1982, through May 31, 1983. This contract contained an "evergreen provision," under which the contract would automatically renew from year to year unless the union or the roofing contractors gave notice, not less than sixty days prior to the expiration date, of a desire to modify, amend, or terminate the agreement. During 1982, the union filed an unfair labor practice charge. As a result, the union and Weathercraft entered into a settlement agreement and an interim agreement extending the 1982–83 collective bargaining agreement, as modified, until May 31, 1984. These agreements recognized Weathercraft's right to withdraw from the roofing contractors association and negotiate with the union on its own after May 31, 1984.

On March 22, 1984, the union received a letter from Weathercraft which stated:

"So there are no misunderstandings, Weathercraft Co. of Topeka hereby advises each of you listed above that it is withdrawing from the Associated Roofing Contractors of Topeka, Kansas, and it will not participate in the Employers Bargaining Unit in upcoming labor contract negotiations. Weathercraft Company of Topeka, will negotiate a contract separately with Roofers Local 20B."

Rec., vol. II, at 75. On May 29, 1984, the union's business manager sent Weathercraft a letter stating: "I am pleased to inform you that the members of Local # 20B voted not to open the contract for negotiations as provided for in Article XX of the Agreement [the evergreen provision], thus agreeing to work under the contract without change for another year." *Id.* at 77.

In subsequent correspondence, Weathercraft insisted it and the union had agreed that the contract would expire on May 31,

1984 and that its March 22 letter confirmed that understanding. The union took the position that the evergreen clause was incorporated into the interim agreement, and insisted that because it had allegedly received no timely notification of Weathercraft's desire to modify or amend the contract, the contract renewed automatically. Efforts to bargain over a new contract were unavailing and Weathercraft instituted its unilateral changes on September 10, 1984.

## II.

█ The Board's complaint charged Weathercraft with committing unfair labor practices by failing to notify federal and state mediation agencies of its dispute with the union, and by instituting unilateral changes in the collective bargaining agreement. Section 8(a)(5) of the Act states that it is an unfair labor practice for an employer to refuse to bargain collectively with the representatives of his employees. 29 U.S.C. § 158(a)(5) (1982). Section 8(d) provides that

"the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification—

(1) serves a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification;

(2) offers to meet and confer with the other party for the purpose of negotiating a new contract or a contract containing the proposed modifications;

(3) notifies the Federal Mediation and Conciliation Service within thirty days after such notice of the existence of a dispute, and simultaneously therewith notifies any State or Territorial agency established to mediate and con-

ciliate disputes within the State or Territory where the dispute occurred, provided no agreement has been reached by that time; and

(4) continues in full force and effect, without resorting to strike or lock-out, all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later."

*Id.* § 158(d). The courts have consistently interpreted section 8(d) as imposing these four requirements only " 'upon the party to the contract who raises the possibility of industrial conflict by moving to open up the existing contractual agreements.' " *NLRB v. Peoria Chapter of Painting Contractors,* 500 F.2d 54, 56 (7th Cir.1974) (quoting *United Furniture Workers v. NLRB,* 336 F.2d 738, 741 (D.C.Cir.1964)); *see also International Alliance of Theatrical Employees v. NLRB (IATSE),* 779 F.2d 552, 555–56 (9th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 3273, 91 L.Ed.2d 563 (1986). The party who first gives notice as provided by section 8(d)(1) is thus considered the initiating party and bears the burden of complying with section 8(d)(3), notwithstanding the other party's subsequent indication that it desires to renegotiate as well. *See IATSE,* 779 F.2d at 554 n. 3; *NLRB v. Mar–Len Cabinets, Inc.,* 659 F.2d 995, 998 (9th Cir.1981).

█ In this case, Weathercraft concedes in this court that the Board correctly characterized the March 22 letter as appropriate notice of Weathercraft's desire to terminate or modify the collective bargaining agreement within the meaning of section 8(d)(1). Weathercraft's argument that it was nonetheless not the initiating party for purposes of section 8(d)(3) because the union subsequently attempted to invoke the evergreen clause is simply without legal support.[1]

Section 8(d)(4) expressly prohibits the initiating party from modifying the existing contract only for sixty days after notice

---

1. The Board did not decide whether the evergreen clause was incorporated into the interim agreement. Rather, it concluded that the issue was rendered immaterial by Weathercraft's failure to give notice as required by section 8(d)(3).

has been given to the other party under section 8(d)(1). However, the courts have uniformly held that an initiating party who gives untimely section 8(d)(3) notice to the Federal Mediation and Conciliation Service commits an unfair labor practice by resorting to strike, lock-out, or unilateral modification within thirty days of such notice even when the action occurs more than sixty days after notice to the other party. *See, e.g., United Furniture Workers,* 336 F.2d at 740–41; *Local Union 219, Retail Clerks Int'l Ass'n v. NLRB,* 265 F.2d 814, 818 (D.C.Cir.1959); *see also* R. Gorman, *Basic Text on Labor Law,* ch. 20, § 7, at 425–26 (1976). We agree with this interpretation. Accordingly, Weathercraft committed an unfair labor practice by unilaterally changing its agreement with the union when no section 8(d)(3) notice had been given.

### III.

Based on its conclusion that Weathercraft committed unfair labor practices by failing to give the notice required by section 8(d)(3) and by unilaterally modifying the agreement before such notice had been given, the Board ordered Weathercraft to restore wages, rights, and benefits to the affected employees and benefit funds for the period from September 10, 1984, to thirty days after Weathercraft had complied with section 8(d)(3).[2] Weathercraft contends that, because it attempted to bargain in good faith and because its failure to give section 8(d)(3) notice was inadvertent, a make whole remedy extending beyond thirty days from the date of the unilateral changes is unwarranted.

Section 10(c) of the Act authorizes the Board "to take such affirmative action including reinstatement of employees with or without backpay, as will effectuate the policies of [the Act]." 29 U.S.C. § 160(c) (1982). The Supreme Court "has repeatedly interpreted this statutory command as vesting in the Board the primary responsibility and broad discretion to devise remedies that effectuate the policies of the Act, subject only to limited judicial review." *Sure–Tan, Inc. v. NLRB,* 467 U.S. 883, 898–99, 104 S.Ct. 2803, 2812, 81 L.Ed.2d 732 (1984). The Court has cautioned the courts of appeals that "they should not substitute their judgment for that of the Board in determining how best to undo the effects of unfair labor practices." *Id.* at 899, 104 S.Ct at 2812. We have accordingly held that "[t]he Board's remedial order should not be disturbed unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." *Dayton Tire & Rubber Co. v. NLRB,* 591 F.2d 566, 570 (10th Cir.1979).

Awards of backpay clearly fulfill the policies of the Act by restoring the economic status quo that would have existed but for the employer's unlawful conduct. *See, e.g., NLRB v. J.H. Rutter–Rex Mfg. Co.,* 396 U.S. 258, 263, 90 S.Ct. 417, 420, 24 L.Ed.2d 405 (1969); *NLRB v. International Ass'n of Bridge Workers, Local 433,* 600 F.2d 770, 777 (9th Cir.1979), *cert. denied,* 445 U.S. 915, 100 S.Ct. 1275, 63 L.Ed.2d 599 (1980); *Dayton Tire & Rubber,* 591 F.2d at 570. While we agree with Weathercraft that the Board is not empowered to devise a punitive measure, *see Republic Steel Corp. v. NLRB,* 311 U.S. 7, 11–12, 61 S.Ct. 77, 79–80, 85 L.Ed. 6 (1940), we see nothing punitive under the circumstances here in requiring a remedy that covers the entire period during which Weathercraft's conduct was in violation of the Act. *See, e.g., NLRB v. Joseph Magnin Co.,* 704 F.2d 1457, 1462 (9th Cir.1983), *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1014, 79 L.Ed.2d 244 (1984); *NLRB v. Atlantic Int'l Corp.,* 664 F.2d 1231, 1233 (4th Cir.1981); *Leeds &*

---

**2.** The courts have disagreed on the violating party's right to strike, lock-out, or modify the contract once thirty days has run from the untimely section 8(d)(3) notice. *See, e.g. Local Union 219, Retail Clerks Int'l Ass'n v. NLRB,* 265 F.2d 814, 818–19 (D.C.Cir.1959); *see also* R. Gorman, *Basic Text in Labor Law,* ch. 20, § 7, at 426 (1976). In this case, the Board ordered Weathercraft to cease and desist from terminating or modifying the agreement only until thirty days after it had complied with section 8(d)(3). The union has not challenged that portion of the Board's order.

*Northrup Co. v. NLRB*, 391 F.2d 874, 879–80 (3d Cir.1968).

The Board's petition for enforcement of its order is granted.